UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel PROA–TOVAR, Defendant–
Appellant.

No. 90–50373.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1991.

Decided Sept. 18, 1991.

Debra Ann DiIorio, Federal Defenders of San Diego, San Diego, Cal., for defendant-appellant.

Kimberly D. Allan, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before GOODWIN, HUG and FARRIS, Circuit Judges.

GOODWIN, Circuit Judge:

Daniel Proa–Tovar appeals his felony conviction for being a deported alien in the United States, in violation of 8 U.S.C. § 1326 (1988). Relying on *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), Proa–Tovar collaterally challenges the deportation order upon which his section 1326 violation is predicated. He argues that his February 1989 deportation could not be the basis of his November 1989 criminal offense because the immigration judge had denied him direct judicial review of the underlying deportation.

In December 1988, Proa–Tovar pled guilty in state court to felony possession of cocaine for sale. The conviction made him eligible for deportation. On February 24, 1989, following a hearing conducted by an Immigration and Naturalization Service administrative law judge, he was ordered deported. He did not appeal.

On November 2, 1989, Proa–Tovar was found again in San Diego. The police turned him over to immigration officials and he was promptly indicted by a federal grand jury for being present in the United States following deportation, in violation of 8 U.S.C. § 1326. The district court denied his motion to quash the indictment on *Mendoza–Lopez* grounds, and he appeals his resulting conviction.

Proa–Tovar argues that the deportation hearing in February effectively denied him opportunity for judicial review because he did not knowingly waive his right to appeal the deportation order.

I. *The right to collateral review*

■ We first determine whether, in a section 1326 criminal prosecution, a defendant can make a collateral attack on the underlying deportation order. *Mendoza–Lopez* holds that where defects in an administrative proceeding have effectively foreclosed direct judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used as conclusive proof of an element of a criminal offense. *Mendoza–Lopez*, 481 U.S. at 838, 107 S.Ct. at 2155; *see also United States v. Villa–Fabela*, 882 F.2d 434, 438 (9th Cir.1989).

■ If waiver of the right to appeal a deportation proceeding was not knowingly and intelligently made, direct judicial review has been effectively denied and use of the deportation order as the necessary predicate to a section 1326 offense may be

collaterally challenged. *Mendoza–Lopez*, 481 U.S. at 839–40, 107 S.Ct. at 2155–56.

## II. *Was there a knowing waiver?*

Proa–Tovar alleges that the waiver of his right to appeal the deportation proceeding was not knowing and considered. The government argues that the record of the deportation proceeding indicates that Proa–Tovar's waiver was valid.

At the opening of the hearing twelve detainees appeared before the immigration judge in response to show cause orders. The immigration judge had appointed a nearby lawyer to act as counsel, without pay, for the group of aliens. The appointed counsel stated that he had interviewed each detainee and that each had consented to representation.

The immigration judge caused a number of routine questions to be put to the group, in Spanish. The immigration judge then inquired of counsel: "[a]nd can you tell that they do understand the nature of this hearing or the rights they have." Counsel responded, "Yes, that's correct your honor." At the conclusion of the hearing the English speaking judge, through an interpreter, offered each Spanish speaking detainee an opportunity to make a final statement opposing or questioning the deportation decision. All declined.

The judge then explained that eleven of the twelve detainees would be deported and one would be granted voluntary departure. The judge asked the eleven whether they understood the deportation order and the reasons for it. The judge asked the detainees to "answer together" and, as a group, they responded "yes."

Finally the immigration judge questioned government counsel and appointed counsel as follows:

Judge: Alright now, attorneys, you have both heard the decision stated and ah, I must ask if there is any appeal? Mr. Siddel, do you want to make any appeal?

Attorney: No appeal with [sic].

The immigration judge concluded the hearing with the following statement:

Judge: To all of the respondents. Gentlemen, there will be no appeal in your cases. So the decision in your case is final. I promise you will all go to Mexico tonight and am giving you and the attorneys copies of the decision.

In *Mendoza–Lopez*, the Supreme Court questioned the use of an administrative order to establish an element of a criminal offense. *Mendoza–Lopez*, 481 U.S. at 838 n. 15, 107 S.Ct. at 2155 n. 15. The Court stressed that such a practice could only be legitimized by adequate judicial review of the administrative action. *Id.* We therefore require strong evidence to ensure that a valid waiver of the right to appeal exists in the deportation record. "Courts should 'indulge every reasonable presumption against waiver....' " *Barker v. Wingo*, 407 U.S. 514, 525, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972) (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937)) (discussing the Court's view on waiver of constitutional rights).

The judge's generalized questions to appointed counsel and to the roomful of alien detainees regarding whether the detainees understood their rights were inadequate without more to guarantee that each detainee was made aware of his right to judicial review and that his waiver of judicial review was a product of his knowing and considered decision. The immigration judge failed to explain to the detainees their absolute right to appeal, as is customary at such hearings. The quoted exchange with counsel regarding whether any of the detainees wished to appeal reveals no input from any of the twelve aliens present. We cannot conclude from the record that the decision to waive the detainees' appeal rights was anything more than the independent decision of Proa–Tovar's appointed counsel. There was no knowing waiver.

## III. *Effect of counsel's "waiver"*

The government argues that representation by counsel, absent proof of ineffective assistance, guarantees the propriety of the waiver. The record in this case precludes

the government from relying on counsel's waiver. The inquiries, standards, and purposes of the law of ineffective assistance of counsel differ markedly from those governing waivers.

 Although broad deference is accorded the many strategic decisions made by counsel throughout the course of representation, the validity of a waiver is subject to exacting scrutiny. For a waiver to be effective, it must be clearly established that there was "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Moreover, waiver by counsel is not, ipso facto, sufficient to establish that a defendant has made a knowing and intelligent waiver. *See Brookhart v. Janis*, 384 U.S. 1, 7, 86 S.Ct. 1245, 1248, 16 L.Ed.2d 314 (1966) (petitioner's constitutional right to confront witnesses could not be waived by counsel without petitioner's consent). Waiver under the *Johnson* standard appears to require knowing participation by the accused. *Cf. Schneckloth v. Bustamonte*, 412 U.S. 218, 235–246, 93 S.Ct. 2041, 2051–2058, 36 L.Ed.2d 854 (1973) (discussing the use of the "knowing and intelligent" waiver standard). While an independent decision by counsel to forego appeal of the deportation hearing may or may not raise the question of ineffective assistance, counsel's waiver will not support a finding that the detainee made a knowing and considered waiver of the right to appeal.

## IV. *Need to show prejudice*

 Proa–Tovar argues because *Mendoza–Lopez* bars the use of the February 1989 deportation order in the § 1326 indictment, he need not show prejudice from the defective waiver. He cites *Villa–Fabela* in support. Although *Villa–Fabela* held that *Mendoza–Lopez* did not affect Ninth Circuit precedent requiring a showing of actual prejudice in collateral attacks on deportation proceedings whose defects did not deny judicial review, we stated that "a procedural defect that effectively denies judicial review precludes use of the deportation order to establish an element of a criminal offense under *Mendoza–Lopez* whether or not the defendant establishes actual prejudice." *Villa–Fabela*, 882 F.2d at 438.

The government asks us in effect to treat *Villa–Fabela* as dictum and to hold instead that where a waiver of appeal was not knowing and intelligent, a defendant in a section 1326 proceeding must show he was prejudiced by the lack of appeal in the deportation proceeding. We decline to do so.

 While we recognize that *Mendoza–Lopez* arose in a different procedural context than we have in this case, it is apparent from the way the immigration judge conducted the deportation hearing in this case that a bright-line rule is needed.

Proa–Tovar presents as weak a case as can be imagined for a showing of prejudice, but the strength of whatever appeal he might have attempted is immaterial. One purpose of the *Mendoza–Lopez* rule is to avoid mini trials on the presence or absence of prejudice after a defective administrative hearing. A corollary purpose is to encourage the Immigration and Naturalization Service to conduct a proper hearing if the deportation order is to be relied upon in future felony prosecutions.

The government argues that we can grant all the judicial review that is necessary and thus satisfy the requirement of *Mendoza–Lopez*. We decline independently to assess the underlying administrative hearing with respect to the fundamental fairness of the use of mass waiver by counsel of all the possible appeals that might have been attempted by a dozen silent aliens.

Other circuits have interpreted *Mendoza–Lopez* to require a showing of prejudice in the collateral challenge. *See, e.g., United States v. Santos–Vanegas*, 878 F.2d 247 (8th Cir.1989); *United States v. Holland*, 876 F.2d 1533, 1536 (11th Cir.1989); *United States v. Palacios–Martinez*, 845 F.2d 89, 91 (5th Cir.), *cert. denied*, 488 U.S. 844, 109 S.Ct. 119, 102 L.Ed.2d 92 (1988).

We believe it to be a better reading of *Mendoza–Lopez* to read it as a bright-line rule and to encourage the INS to make

certain that every person deported as the result of an administrative hearing was adequately apprised, on the record, of his right to appeal. *See Mendoza–Lopez,* 481 U.S. at 840, 107 S.Ct. at 2156 ("If the violation of respondents' rights that took place in this case amounted to a complete deprivation of judicial review of the determination, that determination *may not* be used to enhance the penalty for an unlawful entry under section 1326.") (emphasis added). The alternative is to fill the courts with claims requiring minute scrutiny of such questions as whether the alien was or was not deportable, or whether the alien was or was not eligible for any of the three modes of relief available to avoid deportation: (1) suspension of deportation under 8 U.S.C. § 1254(a)(1); (2) voluntary departure under 8 U.S.C. § 1254(e); and (3) record of admission for permanent residence under 8 U.S.C. § 1259.

All of this review in the courts can be avoided by the simple expedient of instructing immigration judges to follow the law and make a record showing a knowing waiver by each person of his right to appeal.

REVERSED.

FARRIS, Circuit Judge, dissenting:

The majority correctly concludes that Proa–Tovar did not knowingly and intelligently waive his right to appeal and thus was effectively denied judicial review of the deportation hearing. Accordingly, under *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), use of the deportation order in the 8 U.S.C. § 1326 conviction is subject to collateral attack. However, we are not foreclosed on collateral review from assessing whether deficiencies in the deportation hearing rendered use of the deportation order fundamentally unfair in the subsequent criminal conviction. Because I conclude that no prejudice arises from the use of the deportation order as a necessary predicate to a section 1326 offense, I dissent.

Proa–Tovar argues that improper waiver of the right to appeal, in itself, renders the underlying deportation hearing fundamentally unfair and *Mendoza–Lopez* bars the use of the deportation order in the section 1326 indictment. He gleans support for this position from dictum pronounced in *United States v. Villa–Fabela,* 882 F.2d 434 (9th Cir.1989), and discussed by the majority. *See supra* at 1453. To the extent *Villa–Fabela* suggests that the use of an underlying deportation order is absolutely barred if the waiver of appeal was not knowing and intelligent, the opinion misinterprets *Mendoza–Lopez.*

Difficulty in interpreting *Mendoza–Lopez* arises from the peculiar context in which the case was presented to the Supreme Court. The Eighth Circuit, in collaterally reviewing the deportation order at issue in *Mendoza–Lopez,* had found the deportation hearing to have been fundamentally unfair because the detainees did not fully understand the nature of the proceedings. *Mendoza–Lopez,* 481 U.S. at 832, 107 S.Ct. at 2152. In its petition for certiorari, however, the United States did not seek review of this finding, but only challenged the defendant's right to collateral review. *Id.* at 834 n. 8, 107 S.Ct. at 2153 n. 8. Thus, the Court assumed the fundamental unfairness of the underlying hearing and considered only the question of whether a collateral attack was proper. *Id.* at 839, 107 S.Ct. at 2155. The Court held that the use of an administrative order as a conclusive element in a criminal offense offends due process if the accused has not been afforded a meaningful opportunity to challenge the propriety of the underlying administrative proceeding in a judicial forum. *Id.* at 838, 107 S.Ct. at 2155. Consequently, the Court required that a collateral attack be allowed where defects in the administrative proceeding had foreclosed prior judicial review. *Id.*

*Mendoza–Lopez* does not, however, stand for the stronger proposition that an improper denial of the right to directly appeal the administrative proceeding absolutely bars use of the administrative order as an element of a criminal offense. The Court envisioned a two-part analysis of collateral attacks to administrative proceed-

ings. First, the court must determine if a collateral attack is proper. A collateral attack is required where prior judicial review of an administrative proceeding was effectively foreclosed. Second, if a collateral attack is proper, the court must review the merits of the collateral attack and determine whether defects in the administrative proceeding rendered the use of the administrative order fundamentally unfair. The second inquiry is essentially a prejudice inquiry. The Court did not undertake this second inquiry in *Mendoza–Lopez* because the government had not sought review of the Court of Appeal's determination that Mendoza–Lopez's deportation hearing was fundamentally unfair.

The approach argued by Proa–Tovar confuses the due process need to allow a collateral challenge to the underlying administrative proceeding with the actual propriety of the underlying hearing and the fundamental fairness of using the administrative order as an element in a subsequent criminal offense. That Proa–Tovar was not properly informed of his right to obtain judicial review is the basis for allowing judicial review of the proceeding through a collateral attack. It does not, however, provide a basis for determining that the administrative proceeding was so unjust that its subsequent use as an element in the criminal offense would be fundamentally unfair. We may independently assess the underlying administrative hearing and the fundamental fairness of the use of the administrative order.

The majority chooses to reject this approach. First, the majority argues that "[o]ne purpose of the *Mendoza–Lopez* approach is to avoid mini trials on the presence or absence of prejudice after a defective administrative hearing." *Supra* at 1453. As the foregoing analysis demonstrates, a prejudice inquiry need not be a mini-trial. Federal courts are well-equipped to make such an inquiry. Indeed, as the majority acknowledges, the Fifth, Eighth, and Eleventh Circuits already have interpreted *Mendoza–Lopez* to require such a two-part inquiry and a showing of prejudice in the collateral attack. *See supra* at 1453. We should not create a con-

flict among the circuits to salvage the dicta of *Villa–Fabela*. This is especially true in the present case, where Proa–Tovar has made "as weak a case as can be imagined for a showing of prejudice." *Supra* at 1453.

Second, the majority notes that a corollary purpose of the *Mendoza–Lopez* rule is "to encourage the Immigration and Naturalization Service to conduct a proper hearing if the deportation order is to be relied upon in future felony prosecutions." *Supra* at 1453. Under the rule adopted by the Fifth, Eighth, and Eleventh Circuits, immigration judges and the government have an incentive to ensure that proper procedures are followed so that deportation orders will be insulated from subsequent collateral attacks. Any additional encouragement provided by vacating a subsequent criminal conviction is unnecessary and at most minimal.

Proa–Tovar analogizes his case to that before the Eighth Circuit in *Santos–Vanegas*, 878 F.2d 247 (8th Cir.1989). *Santos–Vanegas* permitted a collateral challenge to a deportation proceeding in which the deported alien was inadequately apprised of his rights to appeal. *Id.* at 250–51. However, in addressing the merits of the collateral attack, the *Santos–Vanegas* court required a showing of actual prejudice resulting from the procedural defects in the administrative hearing. *Id.* at 251. The court found such prejudice as a result of the administrative hearing having applied an incorrect legal standard to the defendant's political-asylum claim. *Id.*

In the instant case, no prejudice arises from the use of the deportation order as a necessary predicate to a section 1326 offense. No claim is made that Proa–Tovar was not a deportable alien. Moreover, there has been no argument that Proa–Tovar is eligible for any of the three modes of relief available from deportation: (1) suspension of deportation under 8 U.S.C. § 1254(a)(1); (2) voluntary departure under 8 U.S.C. § 1254(e); and (3) record of admission for permanent residence under 8 U.S.C. § 1259. Because of Proa–Tovar's felony drug conviction in December of

1988, he is statutorily ineligible for any of these forms of relief. *See Villa–Fabela*, 882 F.2d at 439–40. A felony drug conviction qualifies as a crime of "moral turpitude." By statute, an alien can only qualify for suspension of deportation or voluntary departure if he meets the requirement of "good moral character." The felony drug conviction precludes Proa–Tovar from meeting this requirement. Similarly, Proa–Tovar's conviction for a crime of moral turpitude statutorily forecloses relief through registration under section 1259.

Proa–Tovar has failed to articulate any palpable prejudice resulting from defects in the deportation proceeding. Thus, although entitled to judicial review through a collateral challenge to the administrative order, the attack is unsuccessful on its merits. I would affirm.