UNITED STATES of America

v.

Aurelio VIEIRA–CANDELARIO.

Cr. No. 92–044 P.

United States District Court,
D. Rhode Island.

Aug. 7, 1992.

Craig Moore, Asst. U.S. Atty., Providence, R.I., for U.S.

Damon D'Ambrosio, Providence, R.I., for Vieira–Candelario.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The government charged Aurelio Vieira–Candelario with violating 8 U.S.C. § 1326—unlawful reentry into the United States after a prior order of deportation without first seeking the permission of the Attor-

ney General of the United States.[1] The defendant filed two motions with the Court asking for essentially the same relief: a motion to quash the indictment and a motion to dismiss. Both motions collaterally attack the deportation order upon which the charge and indictment are premised. For the reasons discussed below, both motions are denied.

## I

Aurelio Vieira–Candelario entered the United States in December 1963. He resided in the country as a lawful permanent resident alien until October 27, 1989, at which time he was deported. The deportation order, issued on September 20, 1989, followed from his conviction for Simple Possession of Heroin and Possession with the Intent to Deliver Heroin.

The defendant, although a native and citizen of the Dominican Republic, has many ties to the United States. He lived here for over twenty-five years, serving in the United States Army during the Vietnam-war era. His wife and children are all United States citizens. It is unsurprising that he returned to this country after his deportation. The crime he is now charged with is just that: the government alleges he unlawfully reentered the United States following deportation.

Defendant's motions do not challenge the current criminal charge. Instead, defendant collaterally attacks the original deportation order. Defendant argues that the previous deportation order, a necessary element in proving this crime, was unlawfully entered.

The defendant alleges certain specific deficiencies surrounding his deportation order. After pleading *nolo contendere* to the counts of heroin possession and heroin possession with intent to deliver, defendant was brought before the Office of the Immigration Judge on September 20, 1989. The Immigration Judge entered an order deporting defendant and advising him that any appeal must be filed no later than October 2, 1989. In the same Order, the Immigration Judge denied defendant the discretionary relief afforded certain aliens under § 212(c) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1182(c). The judge ruled that he did not have jurisdiction to grant such relief based on previous decisions by the Board of Immigration Appeals.

The next day, defendant filed a notice of appeal. As grounds for the appeal, defendant specifically challenged the judge's ruling on the unavailability of § 212(c) relief, claiming the judge was wrong as a matter of law. That issue was never reached because on October 24, 1989, defendant voluntarily withdrew his appeal. At all times during this process, defendant was represented by counsel.

In this collateral attack, defendant once again presses the issue he abandoned on appeal.

## II

A. *Collateral Attacks on Deportation Orders Allowed by the Supreme Court*

In *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772

---

1. 8 U.S.C. § 1326 reads:

§ 1326. **Reentry of deported alien; criminal penalties for reentry of certain deported aliens**

(a) Subject to subsection (b) of this section, any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that

he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

(1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 5 years, or both; or

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.

(1987), the Supreme Court affirmed the validity of collateral attacks on deportation orders where the deportation order has become a significant element of a subsequent criminal offense. Due process requires that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review...." *Id.* at 839, 107 S.Ct. at 2156. "Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* at 837–38, 107 S.Ct. at 2155 (citations omitted) (emphasis in original).

The Supreme Court declined to enumerate the fundamental procedural errors that would deprive an alien of judicial review. The Court noted that while procedures in administrative hearings "are less stringent than those demanded in a criminal trial, analogous abuses could operate, under some circumstances, to deny effective judicial review of administrative determinations." *Id.* at 839 n. 17, 107 S.Ct. at 2155 n. 17. The Immigration Judge in *Mendoza–Lopez* deprived the aliens of judicial review both by not adequately informing them of their right to request suspension of deportation and by accepting unknowing waivers of their right to appeal.

### B. *Rulings in Other Circuits*

The First Circuit has not yet spoken on this issue. A glance at cases in other circuits provides a sketch of the administrative errors vulnerable to collateral attack.

The Ninth Circuit addressed this issue in two recent cases. In *United States v. Villa–Fabela*, 882 F.2d 434 (9th Cir.1989), an alien challenged his conviction for reentry after deportation. At his deportation hearing, no one provided Villa–Fabela with a list of available legal services in the district of his conviction, and the INS failed to inform him of his right to contact the Mexican Consulate or contact the Consulate for him. The Ninth Circuit held that these deficiencies did not deprive the alien of judicial review, did not render the proceeding fundamentally unfair, did not violate due process, did not prejudice him, and, therefore, did not preclude use of deportation to support conviction for reentry after deportation. The alien also waived his right to appeal the deportation order. The Ninth Circuit held that this waiver was knowing and intelligent. "The immigration judge advised Mr. Villa–Fabela of his right and gave him the statutorily mandated period of ten days to contemplate waiver and to initiate appeal.... Mr. Villa–Fabela expressly waived his right to appeal." *Id.* at 441.

The Ninth Circuit later reached the opposite result in *United States v. Proa–Tovar*, 945 F.2d 1450 (9th Cir.1991), *reh'g granted*, 966 F.2d 1277 (9th Cir.1992). Proa–Tovar appealed his conviction for violating 8 U.S.C. § 1326, arguing that he did not knowingly and intelligently waive his right to appeal the initial deportation order. In this case, the immigration judge failed to explain the right to an appeal to a group of detainees (which included Proa–Tovar) and, though counsel was present, counsel received no input from any of the twelve aliens present before stating that no appeals would be taken. The Court concluded there was no knowing waiver, and reversed the alien's conviction. *Id.* at 1452.

The other circuits which have examined this issue have uniformly found no due process violation in the challenged deportation proceedings. *See United States v. Valdez*, 917 F.2d 466, 469 (10th Cir.1990) (alien had no right to *Miranda*-type warning of right to remain silent in deportation hearings, and alien's waiver of right to appeal was knowing and intelligent); *United States v. Palacios–Martinez*, 845 F.2d 89, 92 (5th Cir.), *cert. denied*, 488 U.S. 844, 109 S.Ct. 119, 102 L.Ed.2d 92 (1988) (deportation hearing was not fundamentally unfair and was therefore sufficient to support alien's conviction for illegal entry following deportation, where immigration judge informed aliens of their basic rights, asked if they understood these rights, and specifically determined that none of the aliens were eligible for relief from deportation);

*United States v. Polanco–Gomez,* 841 F.2d 235, 237 (8th Cir.1988) (alien's claim that his due process rights were violated by prior deportation hearing due to inability to understand particular dialect used by interpreter was not supported by the record, which indicated that alien responded appropriately to a variety of questions); and *United States v. Zaleta–Sosa,* 854 F.2d 48, 51–52 (5th Cir.1988) (because deportee was informed of his right to counsel and his right to appeal, errors in deportation hearing did not render the process fundamentally unfair).

#### C. Standard of Review for Collateral Attack

■ The Court reviews *de novo* Vieira–Candelario's attack on his deportation proceedings. *Colindres–Aguilar v. INS,* 819 F.2d 259, 261 (9th Cir.1987); *United States v. McConney,* 728 F.2d 1195, 1203 (9th Cir.) (holding that *de novo* review is appropriate when the issue is a mixed question of law and fact involving constitutional rights), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### III

#### A. Section 212(c) Relief from Deportation

■■ Section 212(c) of the Act allows certain aliens to apply for discretionary relief from deportation. Only lawful permanent aliens who have resided within the United States for seven years or more are eligible for such relief.[2] Section 212(c) provides a "second chance" for aliens who have significant ties to the United States. The relief, though discretionary, takes into consideration family ties, duration in the United States, hardship to alien and family, service in the United States Armed Forces, history of employment, existence of property or business ties to the United States, and evidence of rehabilitation. *See Matter of Marin,* 16 I & N Dec. 581 (BIA 1978); *Matter of Wadud,* 19 I & N Dec. 182 (BIA 1984). Due to his particular circumstances,

defendant believes he would have been given discretionary relief from deportation had he been given the chance to apply for it.

#### B. The Relationship between Deportation Relief and Exclusion

■ For reasons now shrouded in the depths of immigration law, § 212(c) relief is available in deportation proceedings only to aliens who have been found deportable under a ground of deportation for which there is a comparable ground of exclusion. *Matter of Granados,* 16 I & N Dec. 726 (BIA 1979). Lawful permanent resident aliens with over seven years unrelinquished domicile within the United States are entitled to relief under § 212(c) only when the charge rendering them deportable would also render them inadmissible if they were seeking to enter the United States. The charges which form the grounds of inadmissibility are set forth and enumerated in § 212(a). Once an alien is determined to be statutorily eligible for § 212(c) relief, she still must appear before an Immigration Judge, who has the authority to exercise discretionary relief from deportation. 8 C.F.R. § 212.-3(d); 8 C.F.R. § 242.17.

In this case, the defendant never reached the discretionary decision stage. The Immigration Judge found the defendant statutorily ineligible because the defendant was an "aggravated felon." As the Immigration Judge believed there was no ground for inadmissibility as an aggravated felon under § 212(a), an alien ordered deported on the grounds of a conviction for an aggravated felony was presumably ineligible for application for § 212(c) relief. *Matter of Granados,* 16 I & N Dec. 726 (BIA 1979) (§ 212(c) does not operate as a "general form of discretionary relief"); *Matter of Wadud,* 19 I & N Dec. 182 (BIA 1984) (relief available only if the ground for deportation is also a ground upon which the alien might have been excluded from the country). Despite his belief that the Immigration Judge was wrong as a matter of

---

**2.** The seven year period is strictly enforced. In *Variamparambil v. INS,* 831 F.2d 1362 (7th Cir. 1987), a claim for relief was properly denied where the alien fell eleven days short of the seven year period.

law, defendant withdrew his appeal of the ruling.

In May 1991 (after defendant had been deported), the Board of Immigration Appeals addressed the very issue defendant had abandoned. An Immigration Judge denied § 212(c) relief on the grounds that there was "no exclusion ground based specifically on the fact that an alien has been convicted of an aggravated felony." In *Matter of Meza*, Int.Dec. 3146 (BIA May 22, 1991), the Board of Immigration Appeals overturned that decision, stating "[the] conviction for a drug-related aggravated felony clearly could also form the basis for excludability under § 212(a)(23)" of the Act, 8 U.S.C. § 1182(a)(23) [recodified as § 1182(a)(2)(A)(i)(II) ]. *Id.* at 3. The BIA held that a § 212(c) waiver "is not unavailable to an alien convicted of an aggravated felony because there is no ground of exclusion which recites the words, 'convicted of an aggravated felony,' as in section 241(a)(4)(B) of the Act." *Id.* Thus it appears very likely that had the defendant gone forward with his appeal, he would have been allowed to apply for discretionary relief from deportation.

### C. *Defendant's Claims Do Not Rise to the Level of Fundamental Error*

Defendant argues that the INS fundamentally changed its policy between *Granados* and *Wadud*, the cases relied upon by the Immigration Judge to hold defendant statutorily ineligible for § 212(c) relief, and *Meza*, the case in which an aggravated felon was ultimately allowed to apply for § 212(c) relief. According to defendant, this fundamental policy change is the administrative error which effectively deprived him of judicial review.

By contrast, the government contends that the only error in this case lies with the defendant.

Here, Defendant has failed to make any allegation which even remotely begins to satisfy the foregoing requirements. He does not claim that his deportation hearing was defective in any way, much less that it violated due process. He does not—and, indeed, cannot—allege that the conduct or ruling of the Immigration Judge foreclosed his chance to appeal, inasmuch as he filed a notice of appeal the day after the deportation order was entered. In fact, that notice raised as a ground for appeal the very issue he now seeks to litigate in this Court. His opportunity for judicial review was not lost because of a defect in the proceedings but because of his own choice, while represented by counsel, to withdraw his appeal.

Memorandum in Support of Opposition to Motion to Quash Indictment at 4.

The government argues that the INS did not change its policy. This is supported by *Matter of Hernandez–Casillas*, Int.Dec. 3147 (BIA Jan. 11, 1990); disapproved by the Attorney General on March 18, 1991. Hernandez–Casillas was deported for unlawfully entering the United States without inspection by an immigration officer. The Immigration Judge denied § 212(c) relief because that particular violation was not a specified basis for exclusion. The BIA overruled this decision and attempted to explicitly overrule *Granados* and *Wadud*. The BIA "decided to extend the availability of § 212(c) to all grounds of deportability except [four] sections [of the Act] ... which relate to subversives and war criminals. *Hernandez–Casillas* at 5.

The Attorney General rejected BIA's attempt to expand § 212(c) relief. "[T]he Board erred in holding that relief under Section 212(c) may be afforded for grounds for deportation that are not grounds for exclusion." Decision of March 18, 1991 at 37.

The Court believes that INS never changed its policy that § 212(c) relief from deportation is available only where the underlying ground of deportation has a corresponding ground for exclusion under § 212(a).[3] In this case, the Immigration

---

**3.** The Court recognizes, but does not address, a split in the circuits as to whether, under *Mendoza–Lopez*, an alien must show merely a fundamental error or a fundamental error *and* resulting prejudice. *Compare United States v. Proa–Tovar*, 945 F.2d 1450 (9th Cir.1991) (a defendant

Judge read the grounds for exclusion contained in § 212(c) too narrowly. Had defendant followed through with his appeal, the BIA presumably would have overruled the Immigration Judge and allowed him to apply for § 212(c) relief, as they did in *Meza*. Unfortunately, defendant himself chose to forego his rightful appeal.

 The Court must also find that the waiver of defendant's right to appeal was knowing and intelligent. Defendant was represented by counsel during the deportation proceedings. He obviously understood his right to appeal; on September 21, 1989, the day after the deportation order was entered, defendant did, in fact, file a notice of appeal. Defendant withdrew his appeal, through counsel, on October 24, 1989. This action cannot be interpreted as anything other than knowing, intelligent, and considered.

### IV

In this criminal action, defendant's collateral attack on his previous order of deportation fails. Accordingly, the government may use the administrative proceeding below as evidence of prior deportation. Defendant's motion to quash indictment and motion to dismiss are denied.

SO ORDERED.

in a § 1326 proceeding need not show prejudice as a result of a defective waiver) and *United States v. Encarnacion–Galvez,* 964 F.2d 402 (5th Cir. 1992) (explicitly declining to follow *Proa–Tovar*); *United States v. Holland,* 876 F.2d 1533 (11th Cir. 1989); *United States v. Santos–Vanegas,* 878 F.2d 247 (8th Cir.1989); *United States v. Palacios–Mar-* *tinez,* 845 F.2d 89 (5th Cir.), *cert. denied,* 488 U.S. 844, 109 S.Ct. 119, 102 L.Ed.2d 92 (1988) (all interpreting *Mendoza–Lopez* to require a showing of prejudice in the collateral challenge). As this Court finds no fundamental error and knowing waiver of the right to appeal, it expresses no opinion on this second-tier question.