UNITED STATES of America,
Plaintiff–Appellee,

v.

Rodrigo CHAVEZ–HUERTO,
Defendant–Appellant.

No. 91–30448.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1992.

Decided Aug. 12, 1992.

George Paul Trejo, Jr., Contreras–Trejo & Trejo, Yakima, Wash., for defendant-appellant.

Gregory M. Shogren, Asst. U.S. Atty., Yakima, Wash., for plaintiff-appellee.

Before: ALARCON, RYMER, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

A detainee, told by an immigration judge of his right to appeal his order of deportation, waived his right to appeal and was deported. He returned to the United States illegally, was apprehended, and convicted of being an alien in the United States after deportation. He contends his waiver of his right to appeal his deportation was not knowing and intelligent because the immigration judge failed to tell him he could be charged with a felony on a later entry without permission. We affirm his conviction.

1. 8 U.S.C. § 1326 states:
   Any alien who—
     (1) has been arrested and deported or excluded and deported, and thereafter
     (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to

## FACTS AND PROCEDURAL HISTORY

Appellant Rodrigo Chavez–Huerto (Chavez) was convicted of being an alien in the United States after deportation in violation of 8 U.S.C. § 1326.[1] On appeal he raises the single issue that his waiver of his right to appeal at his original deportation hearing was not knowing and intelligent because he was not informed of the possible consequences of his deportation, such as commission of a felony if he later re-entered the United States without permission.

At the deportation hearing in Seattle, the immigration judge told the fourteen detainees collectively that they had the right to be represented by a lawyer of their choice, but at their own cost. The judge then asked each detainee if he wanted to speak for himself or procure an attorney. Each one, including Chavez, responded he wished to speak for himself.

After advising the group that each one of them was deportable as charged, the following colloquy took place between the judge and the detainees:

Judge: Does everyone understand that you are being ordered deported to Mexico?

Detainees: Yes, yes, yes....

Judge: All right if you agree with my decision you may accept it as final. However, if you do not agree with my decision, you have the right to appeal my decision to a higher court. Does everyone understand your right to appeal?

Detainees: Yes, yes, yes....

Judge: Does everyone understand?

Detainees: Yes, yes, yes....

Judge: All right then, please tell me what you wish to do. Mr. Rodrigo Chavez–Huerto, do you wish to appeal or do you accept the decision?

such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior Act, shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

Respondent: I accept the decision.

Chavez was later found in the United States and charged with violation of 8 U.S.C. § 1326. Prior to his stipulated facts trial, Chavez moved to quash the indictment asserting defects in the prior deportation hearing. The district court listened to the tape of the deportation proceeding and denied the motion. After entry of the judgment of conviction, Chavez appeals.

## DISCUSSION

Chavez relies on *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), for the proposition that he may collaterally attack the deportation order on which the conviction is based, if his waiver of his right to appeal that order was not considered and intelligent. Chavez also relies on *United States v. Proa–Tovar*, 945 F.2d 1450 (9th Cir.1991), to support his argument that the proceedings in this case were insufficient to show his waiver was considered and intelligent. *Proa–Tovar* has been taken en banc, 966 F.2d 1277, (9th Cir.1992). However, it is so factually different from this case that en banc treatment of *Proa–Tovar* will not affect our decision in this case.

In *Proa–Tovar*, the immigration judge held a hearing involving twelve detainees. He appointed a nearby lawyer to act as counsel for the detainees as a group. The immigration judge, after inquiring as to other matters, asked if any of the detainees wished to appeal. The lawyer responded for the entire group, giving none of the detainees the opportunity to respond for himself. The *Proa–Tovar* court held the generalized questions were inadequate to guarantee that each detainee was aware of his right to appeal or that the waiver of the right to appeal was the "product of his knowing and considered opinion." 945 F.2d at 1452. There was therefore no knowing waiver of the right to appeal.

■ Here, the waiver was individually stated by each detainee after an explanation of the right to appeal. Chavez's action was knowing and considered in the sense that he knew he had the right to appeal and specifically waived it.

Chavez asks us to go beyond this analysis and hold that a detainee cannot be held to have waived his right to appeal unless the further consequences of the deportation order are explained to him. Chavez argued that a waiver cannot be "intelligent" or "knowing" unless the detainee knows he faces felony charges on later reentry without permission.

■ The requirement of Rule 11 of the Federal Rules of Criminal Procedure that a defendant entering a plea of guilty must be told of the consequences of the plea offers a useful analogy for the purpose of our analysis. *See generally,* 1 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 173 (1982) ("WRIGHT"). The rule is clear in this circuit, as well as most others, that collateral consequences of the plea need not be disclosed to the defendant.

Most plea consequences determined to be collateral, such as possible sentence enhancement in another case pending in another court, *United States v. Garrett*, 680 F.2d 64 (9th Cir.1982); possible deportation, *Fruchtman v. Kenton*, 531 F.2d 946, 948 (9th Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976); and possible effect on existing parole status, *Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir.1977); *see also, WRIGHT*, § 173, 608–10, nn. 50–55; at least relate to a state of facts or conditions which exist at the time of the plea.

■ The consequences urged by Chavez here, that he could be convicted of a felony on a later entry to the United States, depend on a future and wholly speculative set of circumstances. Chavez has to reenter, or attempt to do so, without permission; be apprehended; be charged and be convicted. This possibility is not a collateral consequence in the same sense as those involved in the cases mentioned above, which flow more directly, albeit collaterally, from a plea of guilt. The scenario Chavez postulates is even more remote, resting as it does on Chavez's voluntary future conduct, as well as the possible action of federal executive and judicial agen-

cies resulting from Chavez's future conduct. In no sense can the future possibility of a felony prosecution be said to be a direct consequence of the deportation. *See United States v. Brownlie*, 915 F.2d 527, 528 (9th Cir.1990) (in rejecting a claim that a prior conviction could not be used to enhance his sentence because the prior plea was involuntary the court said: "The possibility that the defendant will be convicted of another offense in the future and will receive an enhanced sentence based on an instant conviction is not a direct consequence of a guilty plea").

The possibility that a detainee could be convicted of a felony if he later re-enters the United States without permission is so remote that an immigration judge need not inform him of it at the deportation hearing. So long as a detainee knows of his right to appeal and specifically waives it, an otherwise knowing and considered waiver is not invalidated by the failure of the immigration judge to explain what *might* happen under hypothetical future conditions.

AFFIRMED.