21 F.3d 1118
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hugo MLADOSICH-NAVEJAR, aka Hugo Navejar-Mladosich,
Defendant-Appellant.
 No. 93-50308.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 10, 1994.
Decided April 25, 1994.
 
 Before: WALLACE, Chief Judge, FARRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. FACTS
 
 2
 Mladosich was convicted of being found in the United States after having been deported. 8 U.S.C. Sec. 1326(a), (b)(1). We affirm. His first indictment was dismissed without prejudice, because he was not brought to trial within 70 days as required by the Speedy Trial Act. 18 U.S.C. Sec. 3161. The delay resulted from a successful interlocutory appeal.
 
 
 3
 The district court had ruled in accord with our decision in United States v. Proa-Tovar, 945 F.2d 1450 (9th Cir.1991) that evidence of Mladosich's prior deportations would be suppressed because he had not made a knowing and intelligent waiver of appeal of his deportation proceedings. The government took an interlocutory appeal, and while it was pending, we reheard Proa-Tovar en banc and changed the result. United States v. Proa-Tovar, 975 F.2d 592 (9th Cir.1992) (en banc). Our decision on rehearing in Proa-Tovar necessitated reversal of the interlocutory decision and remand of the case at bar to determine whether Mladosich had been prejudiced by the invalid waivers of appeal. By the time the district court received our mandate, only a few days of the Speedy Trial Act limit of 70 days remained--not enough time to begin a jury trial.
 
 
 4
 Mladosich claims various procedural defects in the underlying deportation proceedings. His crime of being found in the United States required prior deportation as an element. We discuss below the particular errors claimed, in connection with whether he was prejudiced.
 
 
 5
 Between the dismissal of his first indictment under the Speedy Trial Act and his reindictment, the INS again ordered Mladosich deported. He claims that this deportation order deprived the district court of jurisdiction on the charge of being present having been deported.
 
 
 6
 The district judge, in sentencing Mladosich, refused to give him a two level reduction for acceptance of responsibility. He claims that since he has admitted the truth of the charge, albeit after he put the government to its proof, he should have been granted the reduction.
 
 II. ANALYSIS
 
 7
 We have jurisdiction to decide this final judgment. 28 U.S.C. Sec. 1291. The issues on appeal are unrelated, and have different standards of review.
 
 A. Speedy Trial
 
 8
 When an indictment must be dismissed for failure to try the defendant within the Speedy Trial Act time limit, the district court exercises discretion whether to dismiss with prejudice or without. 18 U.S.C. Sec. 3162(a)(2).
 
 
 9
 If a defendant is not brought to trial within the time limit required by section 3161(c) ... the information or indictment shall be dismissed on motion of the defendant.... In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.
 
 
 10
 Id. We review for abuse of discretion. United States v. Gilbert, 813 F.2d 1523, 1531 (9th Cir.1987).
 
 
 11
 Judge Hupp carefully applied the statutory criteria to the facts of the case, and exercised his discretion as the statute said he should:
 
 
 12
 The court finds that there is a violation--I'll find that there is a violation of the Speedy Trial Act.
 
 
 13
 That at the time the interlocutory appeal was taken there was either twenty or twenty-one days of--of nonexcludable time left.
 
 
 14
 That the mandate of the 9th Circuit Court of [Appeals], which started the clock running again, was on November 3.
 
 
 15
 That the Speedy Trial Act therefore ran on November 24--maybe is was 23--either 23 or 24--4th and that what has happened after that doesn't help to find excludable time for the motion to dismiss because that was after the Speedy Trial Act had already run.
 
 
 16
 So that Speedy Trial Act time has run and the defendant is correct in that position and the matter must--this indictment is dismissed. The dismissal is without prejudice. The Court finds that applying the three factor test that basically there is no--no particular fault in either the Government, or the defendant, or the Court in the time having run.
 
 
 17
 This is a seriousness--a serious enough offense with a possible sentence in a two and a half to three year range, that it should be considered a serious offense. I also consider it serious because there's an allegation that there are two prior convictions which makes it much more serious than otherwise.
 
 
 18
 Secondly, that the facts and circumstances which led to the dismissal were basically a failure by the 9th Circuit clerk to get the mandate here short of two weeks of the date of the issuance of the mandate in a situation where there was only twenty-one days left and the failure of the Court and counsel to recognize that there was only less than a week when the mandate came to our attention and that there was no time left by the time we had the filing and spreading.
 
 
 19
 In these circumstances, I also find that the impact of reprosecution on the administration of the Speedy Trial Act and the administration of justice is not impacted because there is no fault on the part--on the part of the Government or the Court in the Speedy Trial Act time having elapsed.
 
 
 20
 Accordingly, the dismissal is without prejudice to reindictment.
 
 
 21
 Mladosich argues that he is being punished for a delay he did not cause, but that misconstrues what happened. Mladosich is being punished for being found in the United States after being deported. The "sanctions" provided for under the Speedy Trial Act provision at issue, 18 U.S.C. Sec. 3162, are on the government and its attorneys, but the district judge reasonably exercised his discretion in finding that dismissal with prejudice was unwarranted.
 
 
 22
 The government's attempt to prosecute Mladosich was thwarted by a district court decision which was correct on the law when made, but became incorrect after we reconsidered Proa-Tovar. The government's appeal turned out to be well taken, but the 70 days allowed under the Speedy Trial Act were used up in bits and pieces by the ongoing litigation, and in one large piece by the 14 day delay between when the mandate was issued by the court of appeals clerk and when it was docketed by the district court clerk. United States v. Crooks, 826 F.2d 4, 5 (9th Cir.1987) (period of excludable delay ends with issuance of mandate, not receipt by the district court). A dismissal with prejudice of a serious criminal charge, which this was, punishes the public for the delay of its criminal justice system by preventing the prosecution of crime. Congress has not established any presumption that dismissal should be with prejudice.
 
 
 23
 Mladosich argues that his crime was not very serious. It was a felony with a three year maximum sentence. The judge properly considered its relative seriousness along with the other statutory factors. The statute does not set up pigeonholes for "serious" crimes for which dismissals should be without prejudice, and non-serious crimes, for which dismissals should be with prejudice. Instead, it makes "seriousness" of the crime a factor to be weighed along with the others in the determination of whether to sanction for speedy trial delay by a dismissal with prejudice. Neither the court nor the prosecution caused the delay, so dismissal without prejudice did not have an adverse impact on the administration of the Speedy Trial Act or the administration of justice.
 
 
 24
 B. Prejudice.
 
 
 25
 One of the elements of Mladosich's crime is that he "has been ... deported." 8 U.S.C. Sec. 1326(a)(1). His indictment for being found in the United States having been previously deported listed two deportations, one in 1984 following a felonious burglary, and another in 1990, following a felonious taking of a vehicle without consent. Both deportations were for entry without inspection. He was not represented by counsel at either of the deportation proceedings, and at both hearings Mladosich admitted he had been convicted of crimes that required the INS to deport him, rather than exercise favorable discretion.
 
 
 26
 In this criminal action Mladosich moved to exclude evidence of the deportations and dismiss the indictment on the ground that he had not, in the deportation hearings, been properly advised of his right to appeal. The district court granted the motion under United States v. Proa-Tovar, 945 F.2d 1450 (9th Cir.1991), finding that the group advice of the right to appeal was insufficient, and the government appealed. While the government's appeal was pending, this court reheard Proa-Tovar en banc and determined that prejudice as well as a defective waiver was necessary to collaterally attack a deportation proceeding. United States v. Proa-Tovar, 975 F.2d 592, 594 (9th Cir.1992) (en banc).
 
 
 27
 We reversed the district court's suppression of the deportation evidence and remanded so that the district court could apply Proa-Tovar as changed by the en banc decision. The district court decided that Mladosich was not prejudiced because he would have been deported anyway. Mladosich now appeals the district court's determination that he was not prejudiced. The government maintains that the advice of the right to appeal was adequate, but has taken no cross appeal, so we assume the inadequacy without deciding it.
 
 
 28
 The issues Mladosich claims he could have raised had his waivers of appeal not been defective were denial of his right to counsel and failure to advise him that what he said could be used against him. The right to counsel claimed was regulatory, not constitutional. Under 8 C.F.R. Sec. 242.1(c), he was to "be advised of his right to representation by counsel of his own choice at no expense to the Government ... [and] be advised of the availability of free legal services programs."
 
 
 29
 The district judge carefully examined the transcripts of the hearings and the papers Mladosich had been given, and found that Mladosich "was given all the proper notifications" under the regulations regarding his right to counsel, (ER 38 p 6), and that he was adequately advised that anything he said could be used against him. (ER 40-41). He therefore concluded that Mladosich had not been prejudiced by inadequate advice of his right to appeal. (ER 44). We review these findings for clear error, United States v. Rangel-Gonzales, 617 F.2d 529, 532 (9th Cir.1980), and find none.
 
 
 30
 C. Intervening deportation.
 
 
 31
 Between dismissal of Mladosich's indictment without prejudice for a violation of the Speedy Trial Act and the reindictment upon which he was convicted, he was returned to the custody of the INS and was ordered deported. He was then reindicted before being returned to Mexico. Mladosich argues that because he was not outside the United States between his most recent deportation and the indictment upon which he was tried, the government lacked jurisdiction to prosecute him. He has offered no authority for this proposition, and we have found none. Because this is a question of statutory interpretation we review the district court's decision de novo. United States v. Valencia-Roldan, 893 F.2d 1080, 1082 (9th Cir.1990).
 
 
 32
 The elements of the crime were that he (1) was found in the United States in 1991, (2) being an alien, and (3) having been deported in 1984 and 1990, (4) without obtaining the Attorney General's consent to reapplying for admission. 8 U.S.C. Sec. 1326. The 1993 deportation was immaterial to whether he was guilty of the crime charged. The subsequent deportation order did not deprive the court of jurisdiction over the criminal proceeding.
 
 
 33
 Mladosich argues the logic of the statute requires that the government prove he reentered subsequent to his last deportation, but we cannot see that implication. The statute modifies "is found in [ ] the United States" by the words "at any time." That allows for the possibility of deportation, then finding the person in the United States, then another deportation, without vitiating the criminality of having been found in the United States between the two deportations.
 
 
 34
 D. Acceptance of responsibility.
 
 
 35
 At sentencing, the district judge exercised his discretion not to give Mladosich a two level downward adjustment in his offense level for acceptance of responsibility. U.S.S.G. Sec. 3E1.1. The district judge explained his reasoning: "Mr. Mladosich went to trial in what must have been regarded as a fairly hopeless case.... I didn't see any particular defense to the ... allegations." He also saw no issue for which Mladosich needed to go to trial in order to preserve it for review. While accepting the possibility of a reduction for acceptance of responsibility despite going to trial, the judge regarded a pretrial plea of guilty as an important indicator of acceptance of responsibility. We review for clear error, United States v. Martinez-Gonzalez, 962 F.2d 874, 878 (9th Cir.1992), and find none. Because the sentencing judge is " 'in a unique position to evaluate a defendant's acceptance of responsibility,' her determination is entitled to 'great deference.' " Id. (quoting U.S.S.G. Sec. 3E1.1(a) comment n. 5). The transcript of his remarks shows that the district judge carefully applied the interpretation in the application notes.
 
 
 36
 This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction at trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt.
 
 
 37
 U.S.S.G. Sec. 3E1.1, application note 2.
 
 
 38
 While the two level reduction for acceptance of responsibility does not simply codify a discount for pleading guilty, pleading guilty often amounts to a plain and indisputable acceptance of responsibility for the crime. Mladosich waited to "accept responsibility" until after he put the government to its proof. The district court did not err by finding that his belated "acceptance" did not warrant a two level reduction.
 
 
 39
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3