**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Oscar VILLA–FABELA,
Defendant–Appellant.**

No. 88–3050.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1988.

Decided Aug. 15, 1989.

Nancy Shaw, Asst. Federal Public Defender, Anchorage, Alaska, for defendant-appellant.

Joseph W. Bottini, Asst. U.S. Atty., Anchorage, Alaska, for plaintiff-appellee.

Before NELSON, BOOCHEVER and BRUNETTI, Circuit Judges.

NELSON, Circuit Judge:

*OVERVIEW:*

Mr. Oscar Villa–Fabela appeals from his conviction for the crime of Re–Entry of Deported Alien in violation of 8 U.S.C. § 1326. He collaterally attacks the validity of the underlying deportation proceeding on the grounds that he was not advised of the availability of free legal services programs located in the district where his application was heard, in violation of 8 C.F.R. § 242.16(a) and assertedly in violation of his statutory and procedural due process rights to counsel; he was not told of his right to contact the Mexican Consulate after he was taken into administrative detention, nor did the INS contact the Mexican Consulate on Mr. Villa–Fabela's behalf, in violation of 8 C.F.R. § 242.2(f); and the immigration judge assertedly failed adequately to question Mr. Villa–Fabela regarding his waiver of appeal to ensure that it was knowing and intelligent. Because we find that the procedural defects neither rendered the deportation proceeding fundamentally unfair nor prejudiced the defendant, we affirm the conviction and reject Mr. Villa–Fabela's collateral attack.

*FACTUAL AND PROCEDURAL BACKGROUND*

On January 30, 1986, Mr. Villa–Fabela was given a two-year sentence by an Alaska State court for theft in the second degree. Mr. Harpold, an INS officer, contacted Mr. Villa–Fabela in early July, while he was incarcerated, to determine whether Mr. Villa–Fabela was a United States citizen. Mr. Harpold determined, on the basis of Mr. Villa–Fabela's statement that he had entered the United States without inspection, that Mr. Villa–Fabela was an alien subject to deportation. On July 11, 1986, Mr. Harpold served Mr. Villa–Fabela with an administrative order to show cause, on the back of which is printed a statement that the alien has a right to representation at no expense to the government. Mr. Villa–Fabela signed this paper.

Mr. Harpold stated that he had told Mr. Villa–Fabela of his right to contact the Mexican Consulate, and that Mr. Villa–Fabela had said that he would not contact the consulate because he did not believe contact would be helpful. In September 1986, Mr. Villa–Fabela requested assistance from the Alaska Legal Services Corporation but was refused.

A warrant for the arrest of an alien was issued by the INS and served on Mr. Villa–Fabela on January 23, 1987. Attached to the warrant was a form informing the defendant that pending a final determination of deportability, he could pursue release under a $7,500 bond or seek redetermination of the bond amount by the immigration judge. On January 27, 1987, Mr. Villa–Fabela was released from the state jail and taken by Mr. Harpold to the airport for transportation to Seattle for a deportation hearing. No one advised Mr. Villa–Fabela of his rights immediately prior to the hearing. Immigration officers took Mr. Villa–Fabela before the administrative judge approximately one hour after he had arrived in Seattle. Mr. Villa–Fabela was given a form advising him of his rights on appeal and a document stating that if he were unable to afford legal representation, the Alaska Legal Services Corporation might provide assistance. He was not provided with a list of available legal services in Seattle. Mr. Villa–Fabela testified that he knew no one in Seattle and had insufficient

time prior to the hearing to call an attorney.

During the deportation hearing, the immigration judge informed Mr. Villa–Fabela of his right to representation without cost to the government. The judge asked Mr. Villa–Fabela if he had been furnished with a list of attorneys who might represent him without expense, to which Mr. Villa–Fabela responded affirmatively. The judge also asked if Mr. Villa–Fabela received a paper telling him about his rights in the hearing. Mr. Villa–Fabela answered that he had. The judge offered to continue the hearing to afford Mr. Villa–Fabela an opportunity to obtain counsel. Mr. Villa–Fabela chose to proceed without counsel. The judge conducted the hearing and ordered deportation because Mr. Villa–Fabela admitted that he had entered without inspection. Mr. Villa–Fabela then requested permission to apply for suspension of deportation. The immigration judge considered and denied the request on the ground that Mr. Villa–Fabela was statutorily ineligible for relief from the deportation order. Mr. Villa–Fabela stated that he wished to appeal and requested release pending appeal. The judge advised Mr. Villa–Fabela that he would have to post a bond in order to secure his release. Mr. Villa–Fabela was unable to post the bond. Mr. Villa–Fabela claims that upon leaving the hearing room, an Immigration Officer told him that an appeal would take months. Mr. Villa–Fabela asked to be returned to the hearing room, where he informed the judge that he wanted to waive his appeal because of the amount of time an appeal might take while he remained incarcerated. The judge did not ask Mr. Villa–Fabela how long he thought the appeal might take. Nor did the judge inform Mr. Villa–Fabela that he might petition for a reduction of bail or that he might appeal the bail setting so that he could be at liberty while pursuing his appeal. The judge queried whether Mr. Villa–Fabela's change of mind was coerced. Mr. Villa–Fabela replied that it was his own decision, and the judge accepted the waiver of appeal.

Mr. Villa–Fabela was deported. He subsequently returned to the United States and was indicted for the crime of Re–Entry of Deported Alien in violation of 8 U.S.C. § 1326. Before trial, Mr. Villa–Fabela moved to dismiss the indictment on the ground that the underlying deportation proceeding was defective. The district court rejected his collateral challenge to the deportation proceeding and denied his Motion to Dismiss. Mr. Villa–Fabela was tried by a jury and convicted, and now appeals.

## STANDARD OF REVIEW:

We review de novo Mr. Villa–Fabela's claims that his waivers of his rights to counsel and to appeal were not knowing and intelligent. *Colindres–Aguilar v. INS*, 819 F.2d 259, 261 (9th Cir.1987); *United States v. McConney*, 728 F.2d 1195, 1203 (9th Cir.) (holding that de novo review is appropriate when the issue is a mixed question of law and fact involving constitutional rights), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Mr. Villa–Fabela's claims that the defects in the underlying deportation procedure invalidated the proceeding for use in his criminal conviction are mixed questions of law and fact requiring us to exercise judgment about legal principles. *See McConney*, 728 F.2d at 1200–04.

## DISCUSSION:

I. *The violation of 8 C.F.R. § 242.16(a) does not preclude use of the deportation proceeding to support a criminal conviction under 8 U.S.C. § 1326.*

▮ Mr. Villa–Fabela contends that the failure of the INS or the immigration judge to provide him with a list of free legal services located in the district in which his deportation proceeding took place, in violation of 8 C.F.R. § 242.16(a), denied him the right to counsel. Mr. Villa–Fabela argues that under the new test for collateral attacks on deportation proceedings articulated in *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), he need not establish that the failure was prejudicial.[1] The government ar-

---

**1.** Mr. Villa-Fabela does not argue that it is per se     impermissible to base a criminal conviction on

gues that *Mendoza–Lopez* did not affect the Ninth Circuit's requirement that the procedural defect actually prejudice the alien. The government further argues that the failure of the INS and immigration judge to provide Mr. Villa–Fabela with the information regarding availability of counsel was not prejudicial and did not interfere with due process.

A. *Failure to provide Mr. Villa–Fabela with a list of available legal services in the district in which his deportation hearing was held did not, under the facts of this case, effectively deny Mr. Villa–Fabela judicial review or render the proceeding fundamentally unfair.*

■ The Supreme Court held in *Mendoza–Lopez* that the result of an administrative proceeding may not be used to establish an element of a criminal offense at least where the defects in the proceeding violate due process by effectively foreclosing judicial review. *Mendoza–Lopez,* 481 U.S. at 838 & n. 15, 107 S.Ct. at 2155 & n. 15 ("[A]t a minimum, the result of an administrative proceeding may not be used as a conclusive element of a criminal offense where the judicial review that legitimated such a practice in the first instance has effectively been denied."). Contrary to the government's argument, a procedural defect that effectively denies judicial review precludes use of the deportation order to establish an element of a criminal offense under *Mendoza–Lopez* whether or not the defendant establishes actual prejudice.

The *Mendoza–Lopez* Court held that because the respondents' waivers of their rights to appeal from the deportation proceeding were not considered or intelligent, the respondents were deprived of judicial review. The Court declined to enumerate which other procedural errors are so fundamental that they may functionally deprive an alien of judicial review, but noted that such abuses might be analogous to due

process violations in criminal trials that have been found "necessarily [to] render a trial fundamentally unfair." *Id.* at 839 n. 17, 107 S.Ct. at 2155 n. 17 (quoting *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986)).

■ We hold that the failure of the INS and immigration judge to provide Mr. Villa–Fabela with a list of free legal services located in the district in which his deportation proceeding took place did not, in the particular facts of this case, effectively deprive Mr. Villa–Fabela of judicial review or render the proceeding fundamentally unfair. Although aliens have no Sixth Amendment right to appointment of counsel at government expense, due process entitles them to obtain counsel of their choice at their own expense.[2] *See Rios–Berrios v. INS,* 776 F.2d 859, 862 (9th Cir.1985). The INS and immigration judge are at fault for failing to provide a detainee with a list of available legal counsel in the appropriate district. Nevertheless, the immigration judge took all the steps that were legally necessary to ensure that Mr. Villa–Fabela's waiver of the right to counsel was knowing and intelligent. The immigration judge informed Mr. Villa–Fabela of the right to counsel and asked him if he had been furnished with a list of attorneys who might represent him without expense, to which Mr. Villa–Fabela responded affirmatively. Mr. Villa–Fabela gave no indication that he had received the wrong list or that he had tried without success to obtain counsel. The judge also offered to continue the hearing to afford Mr. Villa–Fabela time to seek an attorney if he so desired. Mr. Villa–Fabela said he wished to proceed with the hearing, expressly waiving his right to counsel. Under these circumstances—in particular, where the alien has expressly waived the right to counsel after stating that he received a list of available lawyers and declining the opportunity to have the hearing continued to afford him time to obtain counsel—the fail-

---

a prior administrative ruling, as the Supreme Court hinted in *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). We therefore do not address that issue.

**2.** Petitioner also has a statutory right to counsel granted by Congress under 8 U.S.C. § 1362.

ure to comply with the requirement in 8 C.F.R. § 242.16(a) did not effectively preclude judicial review.

### B. *The violation of 8 C.F.R. § 242.16(a) was not prejudicial.*

■ *Mendoza–Lopez* held that courts must entertain collateral attacks on deportation orders in prosecutions under 8 U.S.C. § 1326 *at least* when defects in the deportation proceeding effectively eliminated the right of the alien to judicial review or rendered the proceeding fundamentally unfair. Although the Court in *Mendoza–Lopez* did not address directly the question whether aliens could collaterally attack underlying deportation proceedings on other grounds, it repeatedly indicated that such challenges might be available. 481 U.S. at 838, 107 S.Ct. at 2154 ("This principle means *at the very least* that where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternate means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." (emphasis added)); *id.* at 838 n. 15, 107 S.Ct. at 2155 n. 15 (*"Even with this safeguard, the use of the result of an administrative proceeding to establish an element of a criminal offense is troubling.... [A]t a minimum,* the result of an administrative proceeding may not be used as a conclusive element of a criminal offense where the judicial review that legitimated such a practice in the first instance has effectively been denied." (emphasis added)). *Mendoza–Lopez* did not affect Ninth Circuit precedent regarding collateral attacks on deportation proceedings whose defects did not preclude effective judicial review. Prior to *Mendoza–Lopez,* the Ninth Circuit allowed collateral attacks on deportation proceedings for prejudicial defects. Thus, in order to prevail, Mr. Villa–Fabela must demonstrate that the claimed procedural flaws in his deportation proceeding were prejudicial. *See, e.g., United States v. Rangel–Gonzales,* 617 F.2d 529, 530 (9th Cir.1980).

We hold that Mr. Villa–Fabela did not meet his burden of producing evidence that the violation of 8 C.F.R. § 242.16(a) was prejudicial. We have held that infringements of the right to counsel are prejudicial when counsel more effectively could have better marshalled specific facts or arguments in presenting the petitioner's case for asylum or withholding of deportation. *See, e.g., Colindres–Aguilar v. INS,* 819 F.2d 259, 262 (9th Cir.1987). Counsel in this case could not have presented any factors relevant to the determination of whether Mr. Villa–Fabela must be deported, *see, e.g., United States v. Cerda–Pena,* 799 F.2d 1374, 1378–79 (9th Cir.1986); *Rangel–Gonzales,* 617 F.2d at 533, because his criminal record statutorily precluded relief from deportation. Mr. Villa–Fabela acknowledged that he was not a citizen of the United States and that he had entered the United States without inspection by a United States Immigration Officer. Thus, Mr. Villa–Fabela is deportable under 8 U.S.C. § 1251(a)(2). There are three kinds of relief from deportation: suspension of deportation under 8 U.S.C. § 1254(a)(1); voluntary departure under 8 U.S.C. § 1254(e), and record of admission for permanent residence under 8 U.S.C. § 1259. Mr. Villa–Fabela because of his prior criminal convictions, is statutorily ineligible for any of these modes of relief.

Mr. Villa–Fabela is statutorily ineligible for suspension of deportation or voluntary departure because he cannot meet the requirement of "good moral character." The Attorney General has discretion to suspend deportation only of those who have demonstrated good moral character for the past seven years. 8 U.S.C. § 1254(a)(1). No person may be regarded as having good moral character if, during the period he or she is required to have such character, he or she has been "confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more." 8 U.S.C. § 1101(f)(7). Thus, Mr. Villa–Fabela's conviction and subsequent incarceration for sixteen months preclude him from obtaining relief from deportation under section 1254(a)(1). Similarly, Mr. Villa–Fabela's criminal convictions statutorily preclude the Attorney General from granting Mr.

Villa–Fabela relief from deportation through voluntary departure. Section 1254(e) allows the Attorney General discretion to grant voluntary departure only to those aliens who have demonstrated good moral character for at least five years immediately preceding their applications for voluntary departure. 8 U.S.C. § 1254(e). Good moral character is defined in the same way for this subsection as it is for the subsection detailing the requirements for suspension of deportation. 8 U.S.C. § 1101(f).

Similarly, Mr. Villa–Fabela's criminal record forecloses relief through registration under section 1259. The Attorney General may, within his discretion, grant a record of lawful admission for permanent residence only if the alien, among other things, is not precluded from admission by section 1182(a). Section 1182(a)(9) excludes Mr. Villa–Fabela because it bars aliens who have been convicted of a crime involving moral turpitude. Theft is a crime of moral turpitude. *See, e.g., Chiaramonte v. INS,* 626 F.2d 1093, 1097 (2d Cir.1980) ("It has been long acknowledged by this Court and every other circuit that has addressed the issue that crimes of theft, however they may be technically translated into domestic penal provisions, are presumed to involve moral turpitude." (citations omitted)); *Soetarto v. INS,* 516 F.2d 778, 780 (7th Cir. 1975) ("Theft has always been held to involve moral turpitude, regardless of the sentence imposed or the amount stolen.").

Thus, even had Mr. Villa–Fabela been provided with a correct list of available counsel located in the district in which his deportation hearing was held, and had Mr. Villa–Fabela obtained representation, counsel could not have presented his case for relief from deportation more advantageously or marshalled specific relevant facts in support of the petitioner's case. Unlike the cases in *Cerda–Pena* and *Rangel–Gonzales,* to which the parties cited, there was no possibility that there "might have been additional factors," *Cerda–Pena,* 799 F.2d at 1381 (Nelson, J., dissenting) (emphasis omitted), that would bear on the question of deportation. The immigration judge was statutorily precluded from granting

Mr. Villa–Fabela's plea for relief from deportation. Therefore, the violation of 8 C.F.R. § 242.16(a) was not prejudicial.

II. *The INS's failure to inform Mr. Villa–Fabela after he was administratively detained of his right to contact the Mexican Consulate and the INS's failure independently to contact the Mexican Consulate, in violation of 8 C.F.R. § 242.2(f), does not bar use of the deportation order in the section 1326 prosecution.*

■ This Court does not take lightly the INS's breach of its duty to inform aliens of their rights. We find, however, that the violation of 8 C.F.R. § 242.2(f) did not so infect the deportation proceeding as to deprive Mr. Villa–Fabela of judicial review or render the proceeding fundamentally unfair within the meaning of *Mendoza–Lopez.* Mr. Villa–Fabela was repeatedly informed of his right to counsel. Moreover, the magistrate found that an INS agent advised Mr. Villa–Fabela of his right to contact the Mexican Consulate while Mr. Villa–Fabela was still in administrative detention, and that Mr. Villa–Fabela had said that he did not intend to avail himself of this opportunity because he did not believe it would be helpful.

Nor has Mr. Villa–Fabela met his burden of producing evidence that the violation of section 242.2(f) was prejudicial. To establish prejudice, the defendant must produce evidence that 1) he did not know of his right; 2) he would have availed himself of the right had he known of it; and 3) "there was a likelihood that the contact would have resulted in assistance to him in resisting deportation." *Rangel–Gonzales,* 617 F.2d at 533. As explained in section I above, contact with the consulate or attorneys could not have assisted Mr. Villa–Fabela in obtaining relief from deportation.

III. *Mr. Villa–Fabela's waiver of appeal was knowing and intelligent.*

■ Mr. Villa–Fabela argues that his waiver of his right to appeal the deporta-

tion order was not knowing and intelligent. Mr. Villa–Fabela argues that the immigration judge ought to have questioned him regarding his sudden decision to waive appeal, particularly because Mr. Villa–Fabela had stated that the reason he had changed his mind was the amount of time he believed he would have to spend in jail pending appeal.

■ We hold that Mr. Villa–Fabela's waiver was knowing and intelligent. The immigration judge advised Mr. Villa–Fabela of his right and gave him the statutorily mandated period of ten days to contemplate waiver and to initiate the appeal. The immigration judge had no reason to believe that Mr. Villa–Fabela misunderstood the amount of time an appeal might take. Mr. Villa–Fabela did not ask any questions regarding his right to appeal, the time an appeal might take, or the possibility of decreasing bail. Mr. Villa–Fabela expressly waived his right to appeal. Under these circumstances, the immigration judge's failure to question Mr. Villa–Fabela regarding his waiver did not effectively preclude judicial review.

## IV. *Conclusion*

Mr. Villa–Fabela has failed to meet his burden of producing evidence that the procedural defects in the underlying deportation hearing effectively precluded judicial review. Mr. Villa–Fabela was advised of his right to counsel and of his right to appeal. *See United States v. Zaleta–Sosa,* 854 F.2d 48, 51–52 (5th Cir.1988) (finding that similar errors in the deportation proceeding did not render the proceeding fundamentally unfair within the meaning of *Mendoza–Lopez* because the deportee was informed of his right to counsel and of his right to appeal). Nor did Mr. Villa–Fabela establish that the errors were prejudicial. Therefore, we affirm the district court's rejection of Mr. Villa–Fabela's collateral challenge to the deportation order and affirm his conviction.

AFFIRMED.