900 F.2d 254
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Rosa OUTMEZGUINE, Petitioner,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Baltimore
District Office, Respondent.
 No. 89-2753.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Feb. 1, 1990.
Decided: March 30, 1990.
 
 On Petition for Review of an Order of the Immigration and Naturalization Service.
 Arturo Hernandez, Silver Spring, Md., for petitioner.
 Stuart M. Gerson, Assistant Attorney General, Civil Division; Robert Kendall, Jr., Assistant Director; Jill E. Zengler, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for respondent.
 I.N.S.
 AFFIRMED.
 Before DONALD RUSSELL and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Rosa Outmezguine appeals the final order of the Board of Immigration Appeals (BIA) dismissing her appeal from the immigration judge's order which found her deportable and denied her requests for relief from deportation. We affirm the BIA's decision.
 
 
 2
 * Rosa Outmezguine is a 54-year old native of Morocco and a citizen of Israel. She and her four children immigrated to the United States in 1972. From 1981 to 1984, Outmezguine was the owner and operator of the Capri Health Club (Capri) in Clinton, Maryland. The Capri was a house of prostitution.
 
 
 3
 On December 10, 1984, the Immigration and Naturalization Service (INS) issued an order to show cause, charging that Outmezguine was deportable under section 241(a)(12) of the Immigration and Naturalization Act, 8 U.S.C. Sec. 1251(a)(12),[1] because she managed a house of prostitution. An immigration judge heard the evidence against Outmezguine in February and May of 1985. The INS presented testimony from local police officers and from former employees of the Capri which showed Outmezguine knowingly operated a house of prostitution. They also introduced evidence of Outmezguine's prior arrests for prostitution in 1977, one of which resulted in a conviction for solicitation; in addition, she had two convictions for theft, one in 1979 and one in 1983.
 
 
 4
 Outmezguine did not testify at the first two hearings. Through counsel, she admitted her involvement with the Capri but denied any knowledge of prostitution activity. Counsel chose not to put Outmezguine on the stand or to offer a case in rebuttal; rather, he argued that the INS failed to meet its burden of proof. He also argued that even if Outmezguine were found deportable, she was eligible for the following relief: suspension of deportation, 8 U.S.C. Sec. 1254(a); voluntary departure from the United States, 8 U.S.C. Sec. 1254(e); or waiver of deportability, 8 U.S.C. Sec. 1182(c).
 
 
 5
 In June of 1985, the immigration judge issued an interlocutory order finding Outmezguine deportable because the evidence clearly established that she managed a house of prostitution. He also found that she was ineligible for suspension of deportation or voluntary departure.
 
 
 6
 The judge reconvened the hearings in November of 1985 to review Outmezguine's application for waiver of deportability. Outmezguine testified, as did three of her relatives. She also introduced letters from family, friends, and her rabbi. The INS produced evidence suggesting that Outmezguine was still associated with the Capri and that the Capri was still in the business of prostitution. One June 23, 1986, the judge denied her application and ordered her deported to Israel.
 
 
 7
 On appeal to the BIA, Outmezguine claimed there was insufficient evidence showing that she operated a house of prostitution, the judge abused his discretion in denying relief from deportation, and her counsel was ineffective for failing to offer a case in rebuttal. The BIA heard oral arguments in November 1986; it issued its decision on June 30, 1989, dismissing Outmezguine's claims. Outmezguine renews her claims on appeal to this court.
 
 II
 
 8
 Outmezguine's first claim is that the INS failed to meet its burden of proof in showing her involvement with prostitution.
 
 
 9
 In deportation proceedings, the government must "establish the facts supporting deportability by clear, unequivocal, and convincing evidence." Woodby v. INS, 385 U.S. 276, 277 (1966). In this case, the INS had to show that Outmezguine either managed a house of prostitution or was supported by or received proceeds from prostitution. 8 U.S.C. Sec. 1251(a)(12).
 
 
 10
 There seems little doubt that the Capri was a house of prostitution rather than a health club; there was some exercise equipment in the lobby, but an employee testified that it was not used. Instead, customers would enter one of several small rooms, which contained only a bed and nightstand, and have sex in exchange for money. A police officer testified that he entered one of the rooms, pursuant to a search warrant, and encountered a naked man standing before a woman in black leotards who was sitting on the edge of a bed. The woman was April Love, who testified that Outmezguine told her to have sex with customers and told her how much to charge for it (in addition to the room rate of $25-30 per half hour). She and another woman who worked at the Capri with Outmezguine testified to the effect that it was a house of prostitution and that Outmezguine hired them to be prostitutes. The INS introduced an abundance of corroborating evidence, including police records showing arrests of four employees for engaging in prostitution at the Capri, and numerous complaints from neighbors about prostitution activities at the Capri. The INS also introduced copies of the "MET Forum," an adult guide to the Washington, D.C./ Baltimore area, which included advertisements for the Capri, paid for by Outmezguine.
 
 
 11
 Outmezguine admitted being the owner and operator of the Capri but denied knowing about the facts of prostitution. Both the immigration judge and the BIA found Outmezguine's testimony on that point incredible and concluded that there was "clear, unequivocal, and convincing" evidence to support her deportability for prostitution activities.
 
 
 12
 On review, a deportation order must be sustained if supported by "reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. Sec. 1105a(a)(4); Woodby v. INS, 385 U.S. 276, 282-83 (1966). Given this scope of review, we find ample evidence to support the BIA's decision.
 
 III
 
 13
 Outmezguine next claims the judge abused his discretion in denying her relief from deportation.
 
 
 14
 Outmezguine is statutorily ineligible for two of the forms of relief requested. Both voluntary departure under 8 U.S.C. Sec. 1254(e) and suspension of deportation under 8 U.S.C. Sec. 1254(a)(2) require a period of good moral character, five and ten years, respectively, prior to application for relief. Under 8 U.S.C. Secs. 1101(f)(3), 1182(a)(12), a finding of good moral character is precluded where the applicant has received proceeds from prostitution. Thus, Outmezguine's lack of good moral character disqualifies her from consideration under these sections. See United States v. Villa-Fabela, 882 F.2d 434, 439 (9th Cir.1989).
 
 
 15
 Outmezguine's third request for relief is pursuant to 8 U.S.C. Sec. 1182(c) which allows the Attorney General, at his discretion, to waive deportation if the alien has resided in the United States for at least seven years.[2] The BIA takes a balancing approach in reviewing applications for waiver, weighing the seriousness of the alien's crimes against the assets the alien brings to the community and the hardship deportation will cause to the alien and those left behind. Matter of Marin, 16 I & N Dec. 581 (BIA 1978).
 
 
 16
 In this case, the immigration judge heard testimony from Outmezguine and three relatives and read a number of letters written in her behalf. The evidence showed that Outmezguine is loved by her family, all of whom reside in the United States, and that she watches her grandson while her daughter works. She is also involved with a local synagogue where she receives counseling.
 
 
 17
 However, the BIA found that Outmezguine's criminal history, which included convictions for solicitation and theft, in addition to managing a house of prostitution, outweighed the favorable factors. The BIA also noted that Outmezguine's children are over 21 years old and no longer depend on their mother for financial support. Furthermore, Outmezguine's testimony lacked candor.
 
 
 18
 The BIA's decision to deny Outmezguine's request for waiver of deportation is reviewable for abuse of discretion. Vissian v. INS, 548 F.2d 325, 328-29 (10th Cir.1977). In this case, Outmezguine was provided a full and fair hearing at which the factual basis for the BIA's decision was established. The BIA's decision was rationally related to those facts. Accordingly, we find no abuse of discretion.
 
 IV
 
 19
 Outmezguine contends she received ineffective assistance when her attorney failed to put on a rebuttal case or let her testify on the issue of deportability. Consequently, there was an incomplete record before the judge during the waiver of deportability hearing, and, based on that record, the judge incorrectly found that she was still involved with the Capri Health Club. Outmezguine correctly points out that her possible continued association with the Capri weighed heavily against her.
 
 
 20
 However, she did testify at the waiver of deportability hearing and was heard fully on the question of her current association with the Capri. Administrative Record at 248-60. Thus, there would seem to be little prejudice on that issue. With regard to the initial issue of deportability, her counsel's decision not to let her testify appears to have been a tactical one, forcing the INS to prove its case without being able to cross-examine Outmezguine. Furthermore, given the evidence on the nature of the Capri's business and Outmezguine's connection with it, there would again appear to be little prejudice resulting from the attorneys' actions, even if they were ill-advised.
 
 
 21
 To obtain relief based on ineffective assistance of counsel, Outmezguine must show that she suffered prejudice. Figeroa v. INS, 886 F.2d 76, 78 (4th Cir.1989). Consequently, her claim must fail, regardless of whether her attorney's decision was a reasonable one or not, because she has shown no prejudice resulting from that decision.
 
 AFFIRMED
 
 
 [1]
 Sections of the Immigration and Naturalization Act will be cited as codified in Title 8, U.S.C
 
 
 [2]
 The language of the statute provides relief only for resident aliens returning from foreign travel who are subject to exclusion. However, the courts have since applied it to all resident aliens due to equal protection considerations. Francis v. INS, 532 F.2d 268 (2d Cir.1976)