**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel PROA–TOVAR, Defendant–Appellant.**

No. 90–50373.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 23, 1992.

Decided Sept. 14, 1992.

Debra Ann DiÍorio, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Kimberly D. Allan, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before: WALLACE, Chief Judge, GOODWIN, HUG, TANG, D.W. NELSON, NORRIS, BEEZER, WIGGINS, TROTT, FERNANDEZ and RYMER, Circuit Judges.

FERNANDEZ, Circuit Judge:

Daniel Proa–Tovar was convicted of the felony of being an alien who reentered this country without permission after having been deported. 8 U.S.C. § 1326. On appeal, he claims that the Immigration Judge's (IJ) failure to properly advise him of his appeal rights at his deportation hearing precludes this conviction. We affirm.

## BACKGROUND

A deportation hearing for Proa–Tovar and others was held in February of 1989. Before that hearing, Proa–Tovar had been in this country for some time and while here had committed a number of offenses. In 1986, he was convicted of auto burglary in California, and in December of 1988 he was convicted of possession of cocaine for sale, a felony under California law. He also had been convicted earlier that same year of an offense involving the sale of marijuana, after which he had been voluntarily returned to Mexico.

Before the February 1989 deportation hearing the IJ saw to it that all involved, including Proa–Tovar, had the services of an attorney, George Siddell. Proa–Tovar was interviewed by attorney Siddell who informed the IJ that each alien had agreed to his representation. Siddell also told the IJ that each of the aliens admitted the allegations and conceded deportability. One of the aliens requested voluntary departure. The others, as he said, did not ask for voluntary departure because they had several criminal convictions that made them ineligible for departure or, at the very least, made it highly unlikely that they would obtain a discretionary grant. Moreover, his interview with them indicated that they had no desire to ask for various other forms of relief.

The IJ then repeated to all of them what Siddell had said, gave each an opportunity to make a statement, and encouraged them to do so if they so desired. When Proa–Tovar was asked, he said that he had no statement to make.

The IJ then asked, "Mr. Siddell, do you want to make an appeal," to which the response was "No appeal...." Thereupon, the IJ informed Proa–Tovar and the others that there would be no appeal.

The result of that proceeding was that Proa–Tovar was quickly deported to Mexico—the deportation was that very night. He did not stay there long. In November of 1989 he was found in San Diego, California during a raid on a drug house. Because of his surreptitious return to this country, he was indicted for a violation of 8 U.S.C. § 1326.

Proa–Tovar moved to dismiss the indictment and defended during trial on grounds that the deportation itself was invalid because he was not properly advised of and had not knowingly and intelligently waived his right to a direct appeal of the proceedings before the IJ. In so doing, he claimed that he need not show that any prejudice whatsoever flowed from that procedural defect, which resulted in a denial of his direct appeal rights from the IJ's decision. In fact, he essentially conceded that there was no prejudice. For its part, the government concedes that Proa–Tovar's waiver of his direct appeal rights was not knowing and intelligent.

The district court denied the requested dismissal and the jury found Proa–Tovar guilty as charged. In due course he was

sentenced. This appeal followed and a panel of this court reversed the judgment. *United States v. Proa–Tovar*, 945 F.2d 1450 (9th Cir.1991). We then took the case en banc.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 18 U.S.C. § 3231; we have jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

"[Proa–Tovar's] claims that the defects in the underlying deportation procedure invalidated the proceeding for use in his criminal conviction are mixed questions of law and fact requiring us to exercise judgment about legal principles." *United States v. Villa–Fabela*, 882 F.2d 434, 437 (9th Cir.1989). Accordingly, we review his claims *de novo*. *Id.; United States v. McConney*, 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

■ Before us Proa–Tovar again claims that because he was deprived of his direct appeal rights from the IJ's decision he need show no prejudice. Again, he is unable to articulate any prejudice he might have suffered—he points to no plausible grounds of relief that might have been available to him on appeal. The government, as we have already stated, concedes that his waiver of direct appeal rights was not knowing and intelligent. The government's concession establishes the fact that Proa–Tovar was effectively denied his right to direct review of the IJ's decision by the Board of Immigration Appeals and by the courts. It follows that he was entitled to mount a collateral attack on the deportation proceeding when he was prosecuted under section 1326. *See United States v. Mendoza–Lopez*, 481 U.S. 828, 838–39, 107 S.Ct. 2148, 2155, 95 L.Ed.2d 772 (1987); *United States v. Villa–Fabela*, 882 F.2d at 437–38; *see also United States v. Nicholas–Armenta*, 763 F.2d 1089, 1090 (9th Cir.1985).

■ Therefore, we must discover the answer to a narrow and straightforward question: if an alien is deprived of the right to direct judicial review of a deportation order but the deprivation does not result in any prejudice, must evidence of that order be excluded in a later prosecution for illegal reentry? For the most part we must seek the answer in a single delphian pronouncement of the Supreme Court. *Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148. To do so, we must unravel the riddle in which that answer is wrapped. We have, and we find that the answer is "no."

*Mendoza–Lopez* presented the Court with a particularly distressing set of facts. At a group deportation hearing the aliens were not represented by counsel and the IJ refused to explain their rights to relief to them, even though they asked questions which made it apparent that they did not understand what they had been told. In addition, they were not properly advised of their direct appeal rights. In fact, they might have been eligible for suspension of deportation, but their lack of understanding of the concept coupled with the lack of a direct appeal foreclosed that possibility. *Id.* at 830–32, 107 S.Ct. at 2151–52. The government asked the Court "to assume that respondents' deportation hearing was fundamentally unfair...." *Id.* at 839–40, 107 S.Ct. at 2156. The Court did so.

The Court held that there must be *"some meaningful review of the administrative proceeding"* if it is "to play a critical role in the subsequent imposition of a criminal sanction." *Id.* at 837–38, 107 S.Ct. at 2155. It continued:

This principle means at the very least that where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense.... Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent pro-

ceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

*Id.* at 838–39, 107 S.Ct. at 2155 (footnotes omitted).

It is important to observe that the Court did not say that the mere lack of a direct review would preclude later use of the results of the administrative proceeding; it said that the review must be made available at any subsequent criminal proceeding. *Id.* at 839, 107 S.Ct. at 2155–56.

The Court then turned to the application of that principle to the case before it and determined that the fundamental unfairness which infected that case also resulted in "a complete deprivation of judicial review...." *Id.* at 840, 107 S.Ct. at 2156. The Court had already opined that an error at the administrative level might be so fundamentally unfair that it would make effective judicial review impossible. *Id.* at 839 n. 17, 107 S.Ct. at 2155 n. 17. The proceeding it was reviewing was concededly fundamentally unfair in just that sense, so the Court's conclusion was virtually apodictic. Direct review had been precluded and no other judicial review was available under the circumstances. Given the discretionary nature of suspension of deportation decisions, the result in *Mendoza–Lopez* could hardly have been different. In other words, the aliens *were* prejudiced.

■ We are therefore satisfied that the Court has not eliminated prejudice from the equation. Our pre-*Mendoza–Lopez* cases required a showing of prejudice when collateral attacks on immigration orders were made in prosecutions under section 1326. *See, e.g., United States v. Nicholas–Armenta,* 763 F.2d at 1091; *United States v. Calles–Pineda,* 627 F.2d 976, 977–78 (9th Cir.1980); *cf. Colindres–Aguilar v. INS,* 819 F.2d 259, 261 (9th Cir.1987) (due process challenge to INS proceeding requires showing of actual prejudice). We hold that the rule established in those cases also applies when the attack is on the ground that there has been a deprivation of the right to direct appeal of the administrative proceedings. To the extent that the dicta in *Villa–Fabela* is to the contrary, we over-

rule that part of the case. *See* 882 F.2d at 438.

We are confirmed in our view by the decisions of other circuits which have addressed this issue and have reached the conclusion that we reach today. *See United States v. Encarnacion–Galvez,* 964 F.2d 402 (5th Cir.1992); *United States v. Santos–Vanegas,* 878 F.2d 247, 251–52 (8th Cir.1989); *United States v. Holland,* 876 F.2d 1533, 1537 (11th Cir.1989).

We recognize, as did the Court, that there may well be times when the administrative proceedings were so flawed that effective judicial review will be foreclosed. No doubt there will be instances when the very lack of an appeal from the IJ to the Board of Immigration Appeals and thence to the courts will preclude the exercise of discretionary authority that might have prevented the deportation itself. *See Santos–Vanegas,* 878 F.2d at 251–52. Once the person has been deported, the possibility of an effective review of the discretionary action may well become nil. However, we do not now attempt to delineate the contours of that issue for, as we have already said, the facts of this case demonstrate that no such problem can exist here. Here it is essentially conceded that a direct appeal could not have yielded a different result. By all accounts, Proa–Tovar would have been deported anyway. The lack of a direct appeal only resulted in his leaving at a somewhat earlier time. Upon his illegal reentry he would have stood before the courts just as he does now. The fact that the IJ did not punctiliously follow the law and regulations regarding direct appeals has made no legal difference at all.

### CONCLUSION

■ A defendant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice.

We need not and do not attempt to delineate the boundaries of the prejudice ele-

ment. Whatever they might be, Proa–Tovar did not show that he suffered even the possibility of prejudice.

AFFIRMED.

GOODWIN, Circuit Judge, with whom Circuit Judges HUG, TANG and D.W. NELSON, join, dissenting:

I respectfully dissent on the ground of judicial economy. I agree that Proa–Tovar has the thinnest possible ground for complaint in this case. But the fitness of a felon for his punishment has no bearing on the duty of immigration hearing officers to afford all deportees due process of law, as required by their manual. *Ramirez v. Immigration & Naturalization Service*, 550 F.2d 560, 563 (9th Cir.1977).

The majority overrules an earlier decision of this court and encourages INS hearing officers to continue to ignore proper procedure in bulk deportation hearings. The majority recognizes that the underlying deportation in this case was defective. It holds, nonetheless, that the defect was harmless because this particular defendant can show no actual prejudice in his deportation. While the result accomplishes no injustice in this case, it invites future cases, and teaches the wrong lesson. Had we refrained from overruling *United States v. Villa–Fabela*, 882 F.2d 434 (9th Cir.1989) it might have been hoped that the Immigration Service would follow its own rules and the teaching of the Supreme Court in *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) and cut off the source of needless litigation in these mass deportation cases. Although this appeal arose from a federal criminal prosecution, it is worth remembering that the Attorney General of the United States is the chief officer of both the prosecutorial branch of the Justice Department and the Immigration Service.