98 F.3d 1347
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ilan BENABOU, aka Jon Koyo Kaneshiro, aka Avi Assaras,
Defendant-Appellant.
 No. 96-50068.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 9, 1996.*
Decided Oct. 11, 1996.
 
 Before: O'SCANNLAIN, T.G. NELSON and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ilan Benabou appeals from his conviction for illegal reentry into the United States following deportation subsequent to felony conviction, in violation of 8 U.S.C. § 1326(a), (b)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 3
 * On October 24, 1990, the Immigration and Naturalization Service ("INS") personally served Benabou, who was in INS custody, with an order to show cause. The order charged that Benabou was deportable for (1) remaining in the United States for a longer time than permitted, and (2) having been convicted of two or more crimes involving moral turpitude. The order directed Benabou to appear for a deportation hearing at "a place and date to be set."
 
 
 4
 The INS released Benabou from custody on his own recognizance. The order of release directed Benabou to notify the INS of any change in residence within forty-eight hours after the change. On October 26, 1990, the Executive Office for Immigration Review ("EOIR") sent Benabou a notice by regular mail stating that his deportation hearing was scheduled for November 20, 1990, at 8:30 a.m. The notice explained that failure to appear might result in an in absentia hearing and order of deportation.
 
 
 5
 Benabou failed to appear at the appointed time. The immigration judge ("IJ") held the hearing in absentia and ordered that Benabou be deported. A warrant of deportation issued that day. The INS found Benabou in prison in 1994 serving a sentence for additional felony convictions. Benabou was deported on October 8, 1994, pursuant to the warrant of deportation.
 
 
 6
 Benabou reentered the United States on October 23, 1994, without obtaining the permission of the Attorney General. The INS found him in the United States on August 28, 1995. Benabou was indicted on September 12, 1995, of illegal reentry following deportation subsequent to felony conviction, in violation of 8 U.S.C. § 1326(a), (b)(1). The district court denied Benabou's motion to exclude evidence of his deportation, an element of the charged offense. The court concluded that Benabou's deportation was legal and valid.
 
 
 7
 Benabou pled guilty on November 8, 1995, reserving his right to appeal the district court's ruling that the underlying deportation was valid.
 
 II
 
 8
 Benabou argues on appeal that the district court erred when it concluded that his deportation was valid and thus admissible.
 
 
 9
 An alien prosecuted for illegal reentry following deportation under § 1326 may collaterally attack the validity of the underlying deportation order. United States v. Mendoza-Lopez, 481 U.S. 828 (1987). To succeed in his collateral attack, Benabou must show (1) that the deportation proceeding was marked by "fundamental procedural defects," Id. at 841; and (2) that the defects prejudiced him. United States v. Proa-Tovar, 975 F.2d 592, 595 (9th Cir.1992) (en banc) ("the Court has not eliminated prejudice from the equation"). The district court concluded that Benabou's deportation hearing violated due process for defective notice, but that the defective notice did not prejudice him.
 
 
 10
 We agree that Benabou was not prejudiced. We further conclude, however, that the notice the INS gave Benabou did not violate due process. Holding a deportation hearing in absentia does not per se violate due process. See United States v. Dekermenjian, 508 F.2d 812 (9th Cir.1974). A deportation hearing may be held in absentia if the alien has been given "a reasonable opportunity to be present" and "without reasonable cause fails or refuses to attend." 8 U.S.C. § 1252(b); INS v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984).
 
 
 11
 The notice sent to Benabou gave him a reasonable opportunity to be present. At the time of the hearing, § 1252 required only "notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings [would] be held." 8 U.S.C. § 1252(b)(1).[1]
 
 
 12
 The INS personally served Benabou with an order to show cause describing the charges against him. The EOIR mailed the notice of deportation hearing to the address Benabou was specifically ordered not to change without notifying the INS. See also Id. § 1305(a) (alien "shall notify the Attorney General in writing of each change of address and new address within ten days from the date of such change"). The notice explained that Benabou's failure to appear could result in a deportation order against him. Such notice satisfied due process, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity" to be heard. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see United States v. Estrada-Trochez, 66 F.3d 733, 736 n. 1 (5th Cir.1995) (notice of deportation hearing sent by regular mail to last address appellant had provided to INS satisfied the requirements of constitutional due process under Mullane ).
 
 
 13
 Benabou also demonstrated no cause, let alone reasonable cause, for his failure to appear. When served with the warrant of deportation in 1994, Benabou did not move to reopen deportation proceedings nor otherwise claim that he did not receive notice of the deportation hearing. In his collateral attack, Benabou presented no evidence that he did not actually receive the notice. The district court specifically noted that "there is nothing coming forward from the defendant's side that he did not receive a notice of the hearing." The court had "no evidence upon which to make that finding one way or the other."
 
 III
 
 14
 Benabou's failure to show that he did not receive the notice is fatal to his purported prejudice. If the notice was procedurally deficient, Benabou bore the burden of demonstrating actual prejudice therefrom. Proa-Tovar, 975 F.2d at 595. In other words, he must "have been prejudiced in a manner so as potentially to affect the outcome of the proceedings...." United States v. Cerda-Pena, 799 F.2d 1374, 1379 (9th Cir.1986). At a minimum Benabou would have to show that he did not receive the notice of the deportation hearing. Otherwise, we have no basis upon which to conclude that he would have appeared and contested his deportation. Even if Benabou had demonstrated that he did not receive the mailed notice, and that he would have appeared if he had, he did not sufficiently show that the outcome of the proceeding potentially would have been different for the reasons the district judge explained.
 
 IV
 
 15
 As Benabou's notice was neither deficient nor prejudicial, the district court properly concluded that the deportation was admissible.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 36-3
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 There is no dispute that section 545(a) of the Immigration Act of 1990, 8 U.S.C. § 1252b, which requires notice in person or, if not practicable, by certified mail, did not take effect until after Benabou's deportation hearing