124 F.3d 213
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Carlos Steve BURGUENO, Defendant-Appellant.
 No. 96-50578.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1997
Decided Sept. 18, 1997.
 
 1
 Appeal from the United States District Court for the Southern District of California; No. CR-96-00608-MLH; Marilyn L. Huff, District Judge, Presiding.
 
 
 2
 Before: CANBY and THOMAS, Circuit Judges, and KING,** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Carlos Steve Burgueno appeals his conviction by guilty plea for being a deported alien found in the United States, in violation of 8 U.S.C. §§ 1326(a), 1326(b)(1). He alleges violations of the Speedy Trial Act, the Speedy Trial Clause, his due process rights, Fed.R.Crim.P. 48(b), and the prohibition against double jeopardy. We disagree and affirm. Because the parties are familiar with the facts, we will not describe them except as necessary to illuminate certain issues.
 
 I.
 
 5
 We disagree with Burgueno's contention that his INS civil detention, which began on November 7, 1995, constituted an "arrest" for purposes of the Speedy Trial Act, and, therefore, that his indictment on March 27, 1996, exceeded the thirty-day time limit. The Speedy Trial Act applies when a defendant is in custody pursuant to federal criminal charges; civil detentions, such as Burgueno's INS detention, will not ordinarily trigger the thirty-day time limit. United States v. Pena-Carrillo, 46 F.3d 879, 883 (9th Cir.), cert. denied, 115 S.Ct. 1990 (1995). If, however, a defendant can establish a collusion or a ruse between the INS and the prosecutors, which is intended to bypass the Speedy Trial Act, the district court should dismiss the indictment. Id.; United States v. Cepeda-Luna, 989 F.2d 353, 354 (9th Cir.1993).
 
 
 6
 The district court's finding that there was no evidence of collusion was not clearly erroneous. The INS began deportation proceedings at the same time the United States Attorney initiated the original criminal prosecution. Pursuant to its normal procedure, the INS stayed the deportation proceedings pending the conclusion of the criminal case. Once the original complaint was dismissed, the INS immediately renewed the deportation proceedings. Burgueno himself is responsible for the delays in, and the eventual termination of, the proceedings. For example, a hearing was initially scheduled for mid-December but was continued several times at Burgueno's request. In March, an IJ terminated the proceedings when Burgueno was reported to be unavailable because he was in custody in a California county jail for reasons unrelated to the federal charges.
 
 II.
 
 7
 Burgueno's allegation of a violation of the Sixth Amendment's Speedy Trial Clause is similarly flawed. Burgueno's alleged injury is the delay of several months between the time of the initial indictment, which was dismissed without prejudice, and the time of the hearings on the second indictment.
 
 
 8
 United States v. MacDonald, 456 U.S. 1 (1982) forecloses Burgueno's claim. In MacDonald, the Supreme Court held that "no Sixth Amendment right to a speedy trial arises until charges are pending." Id. at 7. The Court continued: "[T]he Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges. Any undue delay after charges are dismissed ... must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." Id.
 
 
 9
 Contrary to Burgeuno's assertions, Klopfer v. North Carolina, 386 U.S. 213 (1967), does not change this result. Burgueno cites Klopfer for the proposition that where a defendant is discharged from custody, but remains subject to prosecution at any time in the future at the discretion of the prosecutor, the speedy trial guarantee continues to apply. As MacDonald clarified, however, Klopfer involved an unusual procedure whereby the prosecutor could suspend proceedings on an indictment indefinitely without dismissing or discharging the charges against the defendant. MacDonald, 456 U.S. at 8 n. 8. Only in such limited circumstances is the Speedy Trial Clause still applicable. Id. The government here possessed no such powers, and the district court had dismissed the original indictment.
 
 
 10
 Burgueno also asserts that his INS detention, which he argues served as a ruse for federal criminal detention, implicates his speedy trial rights. This contention has no merit because the INS detention was not used to facilitate the criminal charges against Burgueno. The district court properly denied the motion to dismiss on Sixth Amendment grounds.
 
 III.
 
 11
 The government's delay in bringing the second indictment did not violate Burgueno's due process rights. In determining whether the government's pre-indictment delay bars prosecution, we first examine whether the defendant suffered actual prejudice. United States v. Manning, 56 F.3d 1188, 1194 (9th Cir.1995). If so, we then consider the length of the delay and the reason for the delay to determine whether a due process violation occurred. Id.
 
 
 12
 Burgueno's claim does not survive the first inquiry. As the district court found, Burgueno suffered no actual prejudice from the delay between the original and the second indictment.
 
 
 13
 Burgueno points to his time in INS custody as evidence of prejudice. The INS detention, however, was not related to the criminal prosecution and therefore is not relevant to establish prejudice. Moreover, the defendant presented no evidence regarding the effect of the delay, such as lost witnesses or evidence. He contends that the delay, in and of itself, was prejudicial, but "[p]roof of prejudice must be definite and not speculative." Id. (internal quotation omitted). Moreover, the district court found that Burgueno himself was, in part, responsible for the delay because he reneged on the initial plea agreement, giving the government little option but to request dismissal without prejudice. Burgueno therefore, does not assert a viable due process claim.
 
 
 14
 Burgueno also claims that the pre-indictment delay violated Fed.R.Crim.P. 48(b), warranting dismissal. The reasons for which defendant's due process pre-indictment delay argument fails also apply here. The district court did not abuse its discretion in failing to dismiss the case under Rule 48(b).
 
 IV.
 
 15
 The district court did not err in denying Burgueno's motion to dismiss on double jeopardy grounds. Burgueno forgets the basic tenet of double jeopardy law: in a non-jury trial, jeopardy does not attach until the court has begun to hear evidence. Serfass v. United States, 420 U.S. 377, 388 (1975). When the district court dismissed the original indictment, neither side had begun to present evidence. As jeopardy never attached in the first case, the bringing of the second indictment did not subject Burgueno to double jeopardy.
 
 V.
 
 16
 Burgueno argues that the district erred in holding that the lawfulness of Burgueno's prior deportation was subject to pretrial determination by the court; he argues that the lawfulness of the deportation is an element of the offense under section 1326 and, accordingly, should be determined by the jury. This court recently rejected an identical argument in United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir.1996), cert. denied, 117 S.Ct. 1096 (1997).
 
 
 17
 Burgueno suggests that Alvarado-Delgado should not retroactively apply to his case because that case enlarges the scope of criminal liability under 8 U.S.C. § 1326. See Marks v. United States, 430 U.S. 188, 191-92 (1977) (holding that retroactive application of a new rule enlarging the scope of criminal liability violates the Due Process Clause).
 
 
 18
 Although Alvarado-Delgado did overrule a prior Ninth Circuit case, United States v. Ibarra, 3 F.3d 1333, 1334 (9th Cir.1993), which had held that the lawfulness of deportation was an element of a section 1326 offense, the court in Alvarado-Delgado was merely aligning Ninth Circuit law with an older Supreme Court decision. Alvarado-Delgado, 98 F.3d at 493. "The Supreme Court held to the contrary in United States v. Mendoza-Lopez, 481 U.S. 828 ... (1987), specifically rejecting United States v. Gasca-Kraft, 522 F.2d 149, 152 (9th Cir.1975), the case upon which Ibarra relied in holding lawfulness of the prior deportation was an element of the § 1326 offense." Id. Because this prior Supreme Court case held that lawfulness of the prior deportation was not an element of a section 1326 offense, Alvarado-Delgado did not announce new law in this regard, and, therefore, application of Alvarado-Delgado does not require a retroactivity analysis. The district court properly held that the lawfulness of Burgueno's prior deportation was subject to pretrial determination by the court.
 
 VI.
 
 19
 The district court did not err in holding Burgueno's prior deportation lawful. A challenge to the use of a deportation proceeding as a predicate to a section 1326 prosecution is permitted only where the deportation proceeding was so procedurally flawed as to effectively eliminate the right of the alien to obtain judicial review. Mendoza-Lopez, 481 U.S. at 839. The foreclosure of judicial review at the deportation proceeding does not, by itself, preclude the use of the deportation in the section 1326 prosecution; the defendant is also required to prove prejudice. United States v. Proa-Tovar, 975 F.2d 592, 595 (9th Cir.1992) (en banc). If direct appeal of the deportation proceeding could not have produced a different result, the deportation is valid for section 1326 purposes. Id.
 
 
 20
 Burgueno was deportable under 8 U.S.C. § 1227 (previously designated as 8 U.S.C. § 1251) because he had been convicted of "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct...." 8 U.S.C. § 1227(a)(2)(A)(ii). The only available means for him to avoid deportation was a section 212(c) relief waiver. At the deportation hearing, the IJ denied Burgueno's application for such relief.
 
 
 21
 Burgueno asserts that the IJ relied on false evidence, causing the IJ to apply an inappropriate legal standard in reviewing the section 212(c) application for relief. The evidence in question was Burgueno's sworn testimony that he had been convicted of trafficking heroin. Although here Burgueno argues that he never suffered such a conviction, the IJ appropriately relied on Burgueno's own testimony that he had been convicted for drug-trafficking. Moreover, the IJ did not focus solely on the drug conviction; the IJ also examined Burgueno's elaborate criminal history background. The IJ applied the correct standard in reviewing Burgueno's section 212 application for relief.
 
 
 22
 Burgueno also complains that the deportation proceeding was flawed because he was not advised of his right to consult Mexican counsel. See 8 C.F.R. 242.2(2)(g) (1995) (repealed 1996). He asserts that Mexican counsel could have helped explain the hardships he would face if returned to Mexico. The district court found, however, that at the deportation hearing Burgueno did describe in detail the hardships he would face if returned, including his claims that he had no ties to Mexico, that his children and family would remain in the United States and that he had no business opportunities in Mexico. There is no prejudice from this error.
 
 
 23
 Burgueno's next contention is that his waiver of appeal was not knowing and voluntary. The record refutes this argument. The district court found that the IJ advised Burgueno of his right to appeal, and of the consequences of waiving this right, both at the beginning and at the conclusion of the deportation hearing. Moreover, at the district court hearing on the legality of the prior deportation, Burgueno admitted that he understood the meaning of the IJ's warning "if you get deported you lose your right to appeal."
 
 
 24
 Thus, we agree with the district court's conclusion that Burgueno's prior deportation was lawful.
 
 CONCLUSION
 
 25
 The district court properly (1) denied defendant's motion to dismiss, (2) determined that the lawfulness of the defendant's prior deportation was subject to pretrial determination by the court, and (3) concluded that defendant's prior deportation was lawful.
 
 
 26
 We affirm the judgment.
 
 
 
 **
 Honorable Samuel P. King, Senior United States District Judge for Hawaii, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3